WILLIAM S. HOLMES, Respondent, *v.* ALANSON CARLEY, Appellant.

31   289
134   304

Where a justice of the peace of another town in the same county, next adjoining the residence of the plaintiff or defendant, has jurisdiction to try the action (3 R. S., 226, § 8, 3d clause), *Held,* that two towns contiguous at either of the corners thereof are adjoining towns, within the meaning of the statute.

APPEAL from a judgment in the Supreme Court, sixth district, which reversed a judgment in the County Court of Cortland county, and affirmed the judgment of a justice's court. The only question presented for review in this case, is the question of jurisdiction of the justice to try the action. The provision of the statute (3 R. S., 5th ed., p. 427, § 6, marg. pag., 226, § 8) is as follows: "Every such action shall be brought before some justice of the town wherein either, 1. The plaintiffs, or one of them reside; or, 2. Where the defendants, or any one of them reside; or, 3. *Before* some justice of another town in the same county, *next adjoining the residence of the plaintiff or defendant.*" It is claimed that this action was not brought before a justice of another town, in the same county of Cortland, *next adjoining* the residence of the parties. There seems to be no dispute about the facts. Both parties resided in the town of Marathon. The justice resided in the town of Virgil, in the same county.

*John H. Reynolds,* for the respondent.

*D. S. Dickinson,* for the appellant.

POTTER, J. Within the spirit and intent of the statute in question, is the town of Virgil, in which the justice resides, next adjoining the town of Marathon, the residence of the parties? These two towns, in fact, are "next adjoining" in no other sense than that of touching at the corners. The words of a statute, if of common use, are to be taken in their natural, plain, obvious and ordinary signi-

fication (1 Kent Com., 462); and it is an established rule of the courts, in giving construction to a statute, first to ascertain its intent. This may be determined, not only from the language of a part, but from the language of the whole and every part of the statute; and the real intention, when accurately ascertained, will always prevail over the literal sense. The intention of the law maker is sometimes to be collected from the cause or necessity of making the statute; and however the intent may be ascertained, it should be followed with reason and discretion, though such construction may seem contrary to the letter of the statute, for it is the *intent* which often gives meaning to words otherwise obscure and doubtful. A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute, is not within the statute, unless it be within the intention of the makers; and such construction ought to be put upon it as does not suffer it to be eluded. (Bac. Abr., Statute 1, §§ 5, 10, and authorities cited; *The People* v. *Utica Ins. Co.*, 15 Johns., 380, 381; 11 Co., 73 b; *Straddling* v. *Morgan*, Plowd., 205; 11 Mod., 161.)

The same idea of the rule of constructing a statute, is very quaintly expressed by Plowden in his commentary upon the case of *Eyston* v. *Studd* (2 Plowd., 465). He says, "it is not the words of the law, but the internal sense of it that makes the law, and our law (like all others) consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law is the soul of the law, '*quia ratio legis est anima legis.*' And the law may be resembled to a nut, which has a shell and a kernel within, the letter of the law represents the shell, and the sense of it the kernel; and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter, and as the fruit and profit of the nut lies in the kernel, and not in the shell, so the fruit and profit of the law consists in the sense more than in the letter. And it often happens, that when you know the letter, you know not the sense, for some-

times the sense is more confined and contracted than the letter, and sometimes it is more large and extensive." This authority, it seems to me, is peculiarly applicable to a case where books of science and the literary lexicons are cited to prove the definitions and meaning of *words*, or in the language of Plowden, to prove what is the body, rather than what is the reason and intent of the statute.

Applying the principles of construction we have collected to the statute in question, it is clearly seen that the intent is to restrict the power of justices over parties to actions in those courts in the particulars mentioned. Before the act for the better and more speedy recovery of debts of the value of $50 (ch. 238 of Laws of 1824), the power of justices over parties was coëxtensive with the limits of the county of which he was a justice. The 30th section of that act introduced the provision in question as a new feature, and as a limitation of their power in this respect. This limitation has been continued ever since. Viewed in the light of a limitation of power, its object most obviously is to prevent inconvenience, expense, and, perhaps, sometimes oppression to a defendant, whose attendance might otherwise be, at the caprice of a plaintiff, compelled at distances remote and inconvenient from his place of residence, to litigate (as often happened) in relation to some trifling difference, in regard to which justice could be as justly administered in the town of the residence of the parties, or one of them, or in some town approximately near to them. The simple reading of this provision instinctively points not only to its object, but demands respect for its propriety and good sense. If there are other reasons than those we have assumed for the enactment in question, those suggested are abundant for the purpose. The object and intent of this provision being so clearly apparent, we are to suppose that the legislature intended to employ such language as would carry out that object. And it is but fair to assume that in the adoption of language to express that intent, a case of such remarkable technicality as that before us did not occur to them as a case to be provided for by the use of more descriptive words than those

employed. It is clear that they intended to *limit* the distance that defendants should be compelled to attend; it is clear they intended this distance should not be more remote than the next town to that of the residence of one of the parties. This idea could only be expressed by such appropriate words of limitation as would naturally be suggested to the mind of the legislator at the time. The question, then, distinctly is, are the words " next adjoining," in this statute, under the circumstances, sufficient to express the intent of the legislature, and confer jurisdiction upon the justice to try this action? Construing this statute by the rules we have laid down, it appears to me that the town of Virgil was not only *next* to Marathon, but also that it "*adjoins*" it. To pass diagonally from Marathon to Virgil, from the northwest corner of the former to the southeast corner of the latter the towns are next to each other—and at the corners they actually touch each other, and we have no legal definition to show what distance the junction between two towns must continue, in order to *adjoin*. A person standing at the nearest point of proximity of Marathon and Virgil could at a step, without an effort at a stride, stand with one foot in Marathon, where both the parties reside, and the other in Virgil, where the justice resides, and it might be, for aught that the case shows to the contrary, upon the threshold of the justice's office. But distances upon a scale have nothing to do with the interpretation of this statute, except in so far as they are measured by the limits of towns lying "next adjoining." If we are right in the interpretation of this statute as to its intent, it is not material whether the words employed in it for this purpose, are literally, and according to the standard lexicons of our language, the best that could be selected. Nor is it a question controlled or demonstrated by the rules of mathematics, or any other science. Though theoretical geometry may demonstrate that the line between these two towns, like all other lines, is without magnitude—has only a mental existence, dwells only in the imagination, and yet is, in effect, such a separator as to prevent contact between these corners of the town, yet such a demonstra-

tion, however true in theory, is also only true in imagination; it is quite too destructive of the law of physics, or material substances, to be practically useful in the interpretation of a statute; indeed it is destructive of the argument upon that side of the question, and of giving any meaning whatever to the words of this statute; it even proves that towns that lie side by side do not adjoin. According to the ordinary understanding of men, and physically and materially, these towns, by touching and coming in contact with each other, are next and adjoining each other, and come within the meaning and intent of this statute. I think, therefore, the judgment of the Supreme Court should be affirmed.

Judgment affirmed.