INNES v. PURCELL, appellant, *et al.*

*Foreclosure — referee's fees. Appealable order.*

An order of the special term made on a summary application after judgment, allowed $100 to a referee appointed to sell under a foreclosure judgment. *Held,* that it charged the owner of the equity of redemption with a greater sum than was lawful, and therefore affected a substantial right and was appealable.

*Held,* also, that a referee appointed to sell in a foreclosure action is entitled only to the same amount allowed by law to a sheriff for the performance of a similar duty.

APPEALS from two orders, one in the action above entitled, allowing the referee $100 for his services, the other in five other actions between the same parties, denying a motion to remove the same referee from the last-mentioned actions, on account of his charge of $100 in the one first mentioned.

Said actions were brought to foreclose mortgages. The referee was appointed to advertise and sell the property pursuant to the directions of the court. He was appointed in the action first mentioned on the 17th day of July, 1873. His bill for services in such action was rendered on or about the 1st day of September, 1873.

He was appointed referee in the five other actions referred to on the 2d day of September, 1873.

*Arnoux, Ritch & Woodford,* for appellant.

*William Vennill,* for respondent.

*A. P. Ketchum,* for referee.

DANIELS, J. There seems to be no reason for dissenting from the disposition made of the motion to dismiss the referee by the special term. No good reason existed for his removal, and the motion on that account was very properly denied. It is not, therefore, necessary to examine the objection made that the order is not appealable.

The other order, making the allowance of the sum of $100 to the referee appointed to make the sale under the foreclosure judgment, stands upon an entirely different principle, for it charges the owner of the equity of redemption with the payment of a definite sum of money which, it is objected, is greater than he or his property can be lawfully charged with. Such an order is appealable when made in a summary application after judgment as this was, for it affects a substantial right. Code, § 349, sub. 5; *People* v. *N. Y. C. R. R. Co.*, 29 N. Y. 418, 422.

The point is, therefore, before this court for decision, whether the law will sanction the allowance to the referee appointed to carry the judgment of foreclosure into effect by a sale, which is contained in the order. No provision for making it seems to be contained in the Code of Procedure. The sections which that system contain providing for allowances relate entirely to such as may be made by the way of additional costs to be allowed on the recovery of judgment. And the amount allowed becomes a portion of the costs afterward inserted in the judgment, except in foreclosure cases where a sale is ordered for subsequently accruing installments of the mortgage debt, and cases in which allowances are provided for. When they are settled before judgment (Code, §§ 308, 309) they are to be allowed, by the express language made use of on the recovery of judgment, by way of additional indemnity to the party, and are entirely unadapted to the proceedings taken after judgment, for the purpose of carrying it into effect. For the expenses of such proceedings some other statutory authority must be found. It has always been the policy of the law to prescribe and fix the compensation which may be demanded for the performance of legal duties by public officers. And where no provision has been made, either directly or indirectly, no fees can lawfully be demanded. Costs and fees are recoverable by virtue of statutory authority, and where no such authority exists, no claim for their recovery can be strictly maintained. *Downing* v. *Marshall*, 37 N. Y. 380.

Before the adoption of the constitution of 1846, and the system

of practice devised by the Code of Procedure, mortgages were fore-closed by action, only in the court of chancery. And under the decree recovered, the sale was made by one of the masters of the court. The execution of the decree, by a sale of the mortgaged premises, was uniformly referred to that officer. 1 Barb. Ch. Pr. 525.

And for his services in the performance of that, as well as the other duties enjoined upon him, the statutes carefully prescribed and specified the fees he should receive. As they were declared by the Revised Statutes, which continued in full force until they were modified by the act of 1840, he was entitled to fifty cents for draw-ing the advertisement or notice of sale, one dollar for attending and adjourning the sale, five dollars for preparing and executing a deed to the purchaser, and commissions not exceeding the sum of twenty dollars to be allowed by the chancellor after notice given to the party to be charged with them. 2 R. S. (Edm. ed.) 650. Besides these fees the master was allowed his expenses and disbursements. With that addition, the master's compensation for the services per-formed by him in executing the decree and consummating the sale was confined to these items, and they in the aggregate amounted to much less than the allowance made by the order appealed from.

· By the act of 1840, which was passed to reduce the expenses attending the foreclosure of mortgages, these fees were reduced in cases where the bill for the foreclosure was taken as confessed, or when the answer served did not deny any material matter set forth in the bill, or the right of a complainant to a decree of foreclosure and sale of the mortgaged premises and payment of his debt, and when no plea or demurrer was served to the bill of complaint. In that class of cases, the master's fees for services performed in the execution of the decree were fixed at the sum of fifty cents for advertising the sale, exclusive of the expense of publication; attending the sale and making a report of it, the sum of two dollars, and for the deed to the purchaser, the sum of one dollar. Laws of 1840, chap. 342. But in construing the provisions of this act, the chancellor held, that the power to allow the commissions provided for by the Revised Statutes, not exceeding the sum of twenty dollars, was not taken away. *Delavan* v. *Payn*, 8 Paige, 459.

The law was in that condition when the new system of practice arising under the changes resulting from the adoption of the consti-tution of 1846 went into effect. By that instrument, the office of

master in chancery, as well as the court itself, was abolished, and decrees which, before that time, were required to be executed by the master, after that were necessarily committed to the functions of another officer. To meet the necessities of the changes made, the judiciary act of 1847 was enacted, by which, among other things, it was enacted that, after the first Monday of July of that year, sheriffs should sell any lands in their respective counties ordered to be sold by decree of any court of record in this State, and give conveyances thereof in the same manner and with like effect as was then done by a master in chancery, and for that service, it was provided further, that, in addition to his disbursements, he should be entitled to receive therefor the same fees as upon sales by virtue of an execution, but that the same should in no case exceed ten dollars. 3 R. S. (5th ed.) 261, § 49. This provision was made to take effect on that day because that was the time fixed by the constitution when the office of master in chancery ceased to exist. Const., art. 14, § 8 ; 3 R. S. (5th ed.) 73. While this act limits the fees to the amount of ten dollars, it may well be doubted whether the restriction to that amount excluded the right to commissions previously provided for by the Revised Statutes ; for the restriction of the fees would not necessarily exclude the right to the commissions allowed to be awarded, in the discretion of the court, to an amount not exceeding $20. The chancellor held that a somewhat similar provision contained in the act of 1840, by which it was enacted that no other fees whatever than those prescribed by that act should be taxed or decreed against the defendant, or demanded or received from him, did not have the effect of excluding the power to award the commissions. *Delavan* v. *Payn*, 8 Paige, 459. That decision is an authority for the continued exercise of the same power, unless the circumstance that the decrees in equity were committed by the act of 1847 to the powers of another and distinct class of officers, should be held sufficient to render the provision made for the compensation of the master for a like service inapplicable to them.

Under the act of 1847, the execution of decrees in equity under which real estate was to be sold was regarded as being exclusively given to the sheriffs of the different counties of the State. In that understanding the rules of the supreme court were adopted in July, 1847. And they provided for the manner in which the duty so conferred on the sheriffs should be discharged. Rule 92 of Equity Rules.

The law upon this subject appears to have remained unchanged

until the Code was amended in 1851, when it was provided that real estate adjudged to be sold must be sold by the sheriff of the county, or by a referee appointed by the court for that purpose, and thereupon the sheriff or referee must execute a conveyance which shall be effectual to pass the rights and interests of the parties adjudged to be sold. Laws of 1851, appendix 95, § 287. This provision has continued to be since that time a portion of that section of the Code. At the time when this change was made by which the court was empowered to appoint a referee to sell real estate when adjudged to be sold by courts of record, no provision was in terms made for his fees and expenses in discharging these duties, and none has since then been enacted upon that subject.

In 1869, an act was passed by which it was designed to restore the exclusive power of the sheriff in the county of New York, to make sales of real estate under judgments of the courts, and to increase the amount of fees for his services beyond that specified by the judiciary act in 1847. Laws of 1869, chap. 569. But this was held to be ineffectual because the act failed to conform to the provision of the constitution relating to the title which should be affixed to local acts. *Gaskin* v. *Meek*, 42 N. Y. 186. The specific compensation prescribed in 1847 for the sale of real property under the judgment or decree of a court of record appears, therefore, to remain unchanged in all cases where the sale may be made by the sheriff of the county of New York.

When the power was conferred under which a referee could be appointed to make the sale instead of the sheriff, no provision was made declaring what fees he should be entitled to receive for the performance of the service. Before that time, for services they were previously empowered to perform, the fees of referees were prescribed by law, but when the statutes were enacted declaring what their fees should be, they simply had judicial duties to perform, including no duties whatever of the description provided for by the amendment made to the Code in 1851, under which they could be empowered to execute judgments for the sale of real estate. The fees for the performance of their judicial duties were first fixed at two dollars per day for the service performed, and one dollar for expenses, and afterward changed in general terms to the amount of three dollars for each day employed in the business of the reference. 2 R. S. 662, § 36; Code, § 314. Since 1848 this provision has remained the same, and as the authority to sell lands

under the judgment or decree of a court of record had not then been conferred on referees, it would seem to follow very directly that this provision could not have been intended or designed as a compensation for that service. It was not and could not have been within the intent of the legislature in enacting this provision, and for that reason, although the service may now be within its literal reading, still it is not to be rewarded by that compensation. The rule upon this subject is that the intent of the enacting authority of the law is to be maintained in its construction. And for that reason a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of a statute is not within the statute unless it be within the intention of the makers. *Holmes* v. *Carley*, 31 N. Y. 289, 290.

If the services to be performed by a referee, under the judgment of a court, providing for the sale of real estate, were to be held to be within the provision of the Code regulating the fees of referees, then the inconsistency would be presented, that for the same official service two different rates of compensation would be provided — one for the sheriff, the other for the refeeee. And there is no good reason for supposing that to have been the design of the legislature. On the other hand, it is much more reasonable to suppose that the measure of compensation for the same services, although performed by different officers, was intended to be uniform.

The services are precisely the same whether performed by the sheriff or a referee. The latter is merely a substitute for the former. He is so treated by the provision of the law giving him power to sell, and the rule relating to the performance of his duties. Code, § 287; rule 73. They involve the execution of the judgment, and are simply ministerial in their nature. And if the referee was designed to be allowed fees for the performance of these duties, as he undoubtedly was, as the service required is precisely that for which fees are allowed to the sheriff, it must have been intended that his compensation should be adjusted by the same standard. His right to those fees, though nowhere expressed, is within the equity of the statute providing them as a compensation for the services his duty under the judgment required him to perform.

In a somewhat analogous instance, where the legislature provided commissions for executors and administrators, by way of compensation for the performance of their duties, guardians and trustees,

though not named in the act, were held to be within the equity of its provisions, and for that reason afterward allowed the same compensation in cases where no distinctive provision was made in their favor. *Meacham* v. *Sternes,* 9 Paige, 398, 402; *Wagstaff* v. *Lowerre,* 23 Barb. 209, 224, 225. The case of a referee performing the duties otherwise devolving upon the sheriff is within the spirit of this principle. The identity of the service, the improbability that the legislature designed to compensate one officer by one rate of fees and another by one altogether different, for doing the same thing, the omission of the legislature to make any specific provision upon the subject, together with the circumstances that the per diem allowance for referees was enacted when they were required to perform only judicial duties, combine to sustain the conclusion that it must have been intended, when, what previously were simply the duties of the sheriff, by way of executing judgments, were allowed to be committed to the performance of referees, that the latter should have the same fees for their services and no others.

There is no reason for holding the services of the referee to be within the equity of the statute providing the compensation of executors and administrators. The duties to be performed are not of the same description. They simply require a sale of real property and the immediate disposal of the proceeds, as directed by the rules and practice of the court. They are merely ministerial, allowing no discretion unless it be in the disposition of applications made for adjournment of the sale. No propriety can exist for holding them to be within the equity of that statute, while another is in force expressly providing the compensation to be made for the duties to be performed, when they may be done by a different officer.

The allowance made to the referee was wrong, and the order making it should be reversed, and his fees should be taxed at the same rate as the statute allows the sheriff for the performace of the same services.

DAVIS, P. J., and DONOHUE, J., concurred.

*Ordered accordingly.*