PEOPLE v. CHALMERS, appellant.

*Assignment for benefit of creditors — bond of assignee — liability of surety.*

H. & N. made an assignment of their property to D. for the benefit of creditors. D. gave a bond under Laws of 1860, chap. 348, § 3, with defendants as sureties, for the faithful discharge of his duties as assignee. Subsequently the assignment was declared void as to certain judgment creditors of H. & N., and the amount of their demands exceeded the value of the property assigned. The assignee was ordered to pay over certain sums out of the assigned property to such judgment creditors, and he having refused so to do an action was brought on the bond. *Held*, that the sureties were not liable. The duties and functions of the assignee *as such* terminated when the assignment was declared void, and the sureties were not liable for his acts in the new capacity arising out of the subversion of the assignment.

APPEAL by defendants from a judgment in favor of plaintiff. The action was brought by the People of the State of New York against Thomas C. Chalmers and Caleb S. Merritt, sureties, and Albert L. De Camp, principal, in a bond given for the faithful discharge of De Camp's duties as assignee of Halsey & Northum, insolvent debtors.

The questions in this case arise under chapter 348 of the Laws of 1860, entitled "An act to secure to creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors."

The third section of that act makes the right of the assignee to sell and dispose of the assigned property and convert it to the purposes of the trust, depend on his giving such a bond as that section provides for. The fifth section of the act provides for bringing an action on the bond, in a certain contingency, by the people, through the district attorney, for the purpose of collecting money to be applied as "the assignee should have applied it." It is claimed by the plaintiffs that the contingency referred to in that section has occurred, and that a right of action on the bond has accrued to the people.

The facts appearing on the trial were substantially these :

On October 30, 1865, Mary Ann Halsey and Oscar P. Northum, composing the firm of Halsey & Northum, made a general assignment for the benefit of their creditors to Albert L. De Camp. The trusts expressed in this assignment were to pay, next after expenses, the full indebtedness of the assignors to Albert L. De Camp; then the full indebtedness of the assignors to two other creditors; then the remaining indebtedness of the assignors. Pursuant to the act of 1860, above referred to, this assignment was duly acknowledged and recorded on the day of its date. Pursuant to the same statute, the assignee, De Camp, as principal, with the defendants, Thomas C. Chalmers and Caleb S. Merritt, as sureties, executed a bond in the penalty of $25,000, reciting the making and recording of the assignment, and conditioned that if the said Albert L. De Camp shall "faithfully execute and discharge the duties of such assignee," and duly account for all moneys received by him as such assignee, the bond shall be void, etc. This bond was dated and acknowledged November 14, 1865, and was approved and filed on the next day.

On April 8, 1866, Hiram K. Miller and others recovered judgment against Halsey & Northum, for $3,221.55 debt, for goods sold to Halsey & Northum on October 27, 1855, and $75.09 costs. On May 11, 1866, the Waverly National Bank recovered judgment against Halsey & Northum for $20,713.72 debt, and $79.97 costs, upon acceptances of Halsey & Northum, maturing at various dates from October 28, 1865, to November 28, 1865. Executions were issued on these judgments and returned unsatisfied.

The plaintiffs then read in evidence, under the defendant's objection and exception, records of judgments in suits to which the sureties were not parties, which, when in evidence, showed the following further facts, viz.:

In January, 1867, the judgment creditors, Hiram K. Miller and others, sued Halsey & Northum, and also De Camp individually and as assignee, charging fraud in the assignment, and asking to have it adjudged fraudulent and void; asking also for an injunction, receiver and accounting. The defendants in that suit answered, denying the allegations of fraud. The cause being referred, the referee reported that the assignment was made with a fraudulent intent on the part of the assignors, but innocently on the part of the assignee; and judgment was rendered declaring the assignment void as to the plaintiffs in that suit, directing the judgments in favor of such plaintiffs to be paid out of the assets covered by the assignment, declaring that the plaintiffs obtained a lien, as of January 24, 1867, on such assets, directing De Camp to account for all the property covered by such assignment which was received by him, or which came to his hands, or which he might with due diligence have received under and by virtue of such assignment, and declaring the plaintiffs entitled to a receiver, etc. This judgment was recovered January 19, 1871.

In January, 1867, the Waverly National Bank commenced suit against Halsey & Northum and De Camp, and on January 19, 1871, obtained judgment declaring the assignment fraudulent, setting it aside, directing the recovery which the bank had obtained, of $20,793.69, to be paid out of the property covered by the assignment, and also directing De Camp to account for all the property covered by the assignment which was received by him, or which came to his hands, etc.

On March 4, 1871, orders were made directing a reference to take the accounts required by the judgments of January 19, 1871, and continuing an order which had been made on October 27, 1870, for the appointment of a receiver. Upon the referee's report judgment was rendered July 9, 1872, directing De Camp, "as such assignee," to immediately pay over $750 costs to plaintiff's attorney, in preference to all other sums, and then $714.95 to plaintiff's attorney, for costs, and then $3,296.64 to Miller and his co-plaintiffs, or to their attorney, and then $2,983.81 to O. H. Wood and O. L. Wood, or to their attorney; $1,419.18 to their attorney for costs; and then the balance of the $15,402.29 was to be paid to the Waverly National Bank, or its attorney. On October 24, 1872, an order was made by the Supreme Court for the prosecution of the bond of De Camp and his sureties in the name of the people.

Upon this evidence the counsel for the sureties moved to dismiss the complaint. The motion was denied, the sureties excepting. Evidence to show what the assignee had received under the assignment, and to show that he had faithfully performed his duty, was then offered to be given on behalf of the defendants, which, being objected to on the ground that the sureties were concluded by the judgments against De Camp, was excluded, the defendants excepting. The motion to dismiss was then renewed, and denied, the defendants excepting.

The defendants asked the court to direct a verdict for them, which the court refused to do, the defendants excepting. The court directed a verdict for the plaintiffs for $17,296.76, to which the defendants excepted.

*F. N. Bangs*, for appellant Chalmers. The bond was not a contract that De Camp would obey the orders of a court or to abide the event of litigation. *Douglass* v. *Howland*, 24 Wend. 35; *Jackson* v. *Griswold*, 4 Hill, 522. The obligation was altered by the adjudication declaring the assignment void. *Gass* v. *Stinson*, 2 Sumn. 453; *Smith* v. *United States*, 2 Wall. 236; *Shellington* v. *Howland*, 53 N. Y. 375. See also *McMicken* v. *Webb*, 6 How. (U. S.) 292; *Birckheaä* v. *Brown*, 5 Hill, 635; *McCluskey* v. *Cromwell*, 11 N. Y. 598.

*J. F. Harrison*, for appellant Merritt, cited *Annett* v. *Terry*, 35 N. Y. 256; *Coan* v. *Osgood*, 15 Barb. 583; *Campbell* v. *Hall*, 16 N. Y. 575; *Clark* v. *Montgomery*, 23 Barb. 464; *Jackson* v. *Griswould*, 4 Hill, 522; *Miller* v. *White*, 50 N. Y. 137.

*Nelson Smith* and *B. K. Phelps*, for respondent, cited Burrill on Assignments (2d ed.), 447, 448, 601; *Henriques* v. *Hone*, 2 Edw. Ch. 120; *Mackie* v. *Cairns*, 5 Cow. 547; *Rapelye* v. *Prince*, 4 Hill, 119; *Bridgeport Ins. Co.* v. *Wilson*, 34 N. Y. 275; *Binsse* v. *Wood*, 37 id. 526; *Methodist Church* v. *Barker*, 18 id. 463; *Leavitt* v. *Dabney*, 9 Abb. N. S. 373.

DANIELS, J. This action is upon a bond given by the defendants under chapter 348 of the Laws of 1860, for the faithful discharge by the principal of his duties as assignee, under an assignment made by the insolvent debtors for the benefit of their creditors, and for

the due accounting for all moneys received by such assignee. That is the form prescribed by the statute for the condition of the bond, and it strictly conformed to the requirement in that respect made. The assignee accepted but never consummated or completed the execution of the trusts created by the assignment. Four creditors of the insolvent assignors, who were dissatisfied with the disposition which the assignment made of the debtors' property and its proceeds, assailed it as fraudulent under judgments recovered by them; and that was finally held to be its character, and for that reason it was held inoperative and void as to their demands. This effectually subverted and annulled the entire assignment, and wholly defeated the objects purposed to be accomplished by it, because the amount due upon the judgment under which it was assailed greatly exceeded all that the assignee received under it for the purpose of the trust, and that was diverted from the trusts mentioned in the assignment, and appropriated to the payment, as far as it might prove sufficient for that purpose, of the creditors' judgments against the assignors and the costs of the proceedings taken by them. This necessarily ended all the rights, duties and functions of the assignee under the assignment. His duties afterward wholly appertained to the application to be made of the property in conformity to the judgments. From that time they became his guide and defined the duties he could be required to perform; they resulted in finding the debtors' property in his possession applicable to the payment of the judgment creditors' demands, and his only obligation was to appropriate it as they required him to do. In that he has failed, and on account of that failure the present action was brought against the assignee and his sureties upon the bond given for the faithful discharge of his duties and the due accounting for the moneys received by him; and the first as well as the most important question arising upon the present appeal is whether that failure was a violation of the condition of the bond. That was answered at the circuit in the affirmative, and the sureties of the assignee were accordingly held liable for his failure to comply with the terms of the creditors' judgments. In no other way could their liability be maintained, for it is only where the assignee fails or refuses to perform the decree or order made against him that an action can be brought upon the bond. Laws 1860, chap. 348, § 5.

The bond was given pursuant to a statutory requirement, and the liability of the sureties in it can, consequently, be no broader than

the purposes designed to be protected by the terms and spirit of the statute. To that extent the sureties are clearly bound, but no farther than that; and, for the purpose of determining the measure of their liability, an examination of the spirit, design and terms of the statute will become necessary. Its main object and purpose appears to have been to render general assignments by insolvent debtors more efficient and certain in the execution of the design for which the common law permitted them to be made, and to secure the full and faithful application of the debtor's property to the discharge of the creditors' demands, according to the directions contained in the assignment. It was no part of the design of the statute to defeat the assignment, or to provide means to secure the ends by which that might be accomplished; neither did it provide or interpose any obstacle not previously existing in the way of creditors dissatisfied with its provisions, disposed to assail it, and attempt its subversion. Their remedies remain precisely as the law had before provided them. They were in no respect accelerated, diminished, or affected by this statute. Its general scope and object was to secure a faithful application of the debtor's assets under the terms and provisions of the assignment, and in that way to protect both debtors and creditors against the waste, improvidence, negligence and infidelity of the assignee in the execution of the trusts created by it. To promote that end, the statute begins by providing for certain formalities to be observed in the execution of the assignment denominating the assignee's estate a trust, and requiring a schedule of the debtor's property to be made and filed under the solemnity of his oath; and then follows the requirement that the assignee shall, with sufficient sureties, to be approved by the county judge, enter into a bond of the nature of that given in this instance, "before he shall have power or authority to sell, dispose of, or convert to the purposes of the trust any of the assigned property;" and, after the lapse of one year, upon the petition of any creditor of the assignor's, the assignee may be required to show cause, before the county judge, why an account of the trust fund created by the assignment should not be made; and that officer, on the hearing, is authorized to decree payment of such creditor's proportional part of such fund. This provision is an important one to be considered in this case, because it is for the default of the assignee to comply with what may be required from him by the order or decree which may be made that his sureties are rendered

liable, and it is apparent that it is directed only to the proper application of the trust fund according to the terms of the assignment. No judgment is rendered necessary to warrant the proceedings of the creditors, as it is where the object is to assail the assignment as unlawful, and subvert and destroy its trusts; but all that is necessary is, that the creditor shall be entitled to a proportional part of the trust fund provided by it for his benefit, and this necessarily assumes the validity of the assignment itself; for in no other way, consistently with the terms used, could the creditor be entitled to a proportional part of the fund mentioned. The remedy is clearly provided for and confined to those creditors claiming a benefit under the terms of the assignment itself. Id., § 4.

And that design is still further exhibited by the provisions made concerning the action which may be brought upon the bond; for it is only when the assignee shall omit or refuse to perform any decree or order made against him for the payment of a debt out of the trust fund, by a judge or court having jurisdiction, that the bond can be ordered to be prosecuted. The default for which that can be done is limited to the non-performance of the decree or order requiring payment to be made out of the trust fund provided for and contemplated by the assignment, and it clearly presupposes the continuance and execution of the trusts mentioned in it. This purpose is still further manifested by the disposition which the court or judge is required to make of the amount collected on the bond, for the only use which, according to the terms used in the act, can lawfully be made of that is that it shall be applied in satisfaction of the debts of the debtor " in the same manner as the same ought to have been applied by " the assignee; and that is as it was directed by the assignment, for under all the proceedings provided for by the statute, no obligations are considered beyond those arising out of that instrument. Id., § 596. They are all prescribed for the apparent and only purpose of securing a faithful execution of the trusts declared by the assignment. It is for their sole protection that the bond was prescribed, and to render that entirely efficient the proceedings mentioned were provided.

The terms in which the condition of the bond is required to be expressed sustain the same result, for they require the sureties to become bound only for the faithful discharge of the duties of the assignee and the due accounting for all moneys received by him. The duties referred to are no other than those arising out of the

assignment, and the moneys simply those received by him as assignee, in the ordinary course of the execution of such trusts. The object and design of the statute in providing the bond are reasonably clear and well defined, and it is the duty of the court to carry them into effect as they are manifested by the law. *Holmes* v. *Carley*, 31 N. Y. 289, 290, and cases cited.

It cannot properly be so far enlarged by construction as to impose upon the sureties an obligation which it was not its purpose to require of them to bear, particularly as neither the law nor the terms of the bond contain any thing which requires that to be done. "Sureties are favored by the general rules of construction so far that their undertaking on behalf of their principal is not to be extended beyond the fair and obvious import of the terms, under the circumstances, made use of for the purpose of expressing it." *Martin* v. *Thomas*, 24 How. (U. S.) 315, 317.

Their undertaking by the bond in suit was that the assignee should faithfully discharge the duties devolving upon him in that capacity and account for the moneys received by him in the same relation. They in no sense became liable for his duties and omissions in the new capacity arising out of the complete subversion of the assignment and all the trusts it contemplated, and provided for by the action of creditors proceeding in hostility to it and in defiance of its provisions. Consequently the omission or refusal to perform the decree or order, for which alone an action may be maintained upon the bond under the terms of the statute providing for it, was not shown upon the trial of this cause. The contingency on which the liability has been rendered dependent never has arisen and no judgment against the sureties was warranted by what appeared in the case. For this reason the other objections to the recovery will not require consideration. The judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

*Judgment reversed and new trial ordered.*