DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

## DURING THE YEAR 1904.

### Charles A. Walker, et al., v. Ella Dailey.

### Gen. No. 4,225.

1. VERDICT—*when, not disturbed.* A verdict based upon conflicting evidence which might have justified a decision either way, will not be disturbed upon appeal, especially where two juries have found the same way.

Action on the case under Dram-Shop Act. Appeal from the Circuit Court of Knox County; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 23, 1903. Rehearing denied April 6, 1904.

E. P. WILLIAMS and COOKE & STEVENS, for appellants; WILLIAMS, LAWRENCE & STEVENS, of counsel.

SHUMWAY & RICE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This case was before us in 101 Ill. App. 575. After it was reinstated in the court below Henderson Woods was again made a co-defendant, and he pleaded to an amended declaration. Upon a second trial there was a verdict against both defendants for $2,000. A motion by defendants for a new trial was denied, and plaintiff had judgment. Defendants appeal. The errors in the instructions pointed out in our former opinion were avoided at the last

(524)

trial, and it is not now argued that the trial court committed any errors, except in refusing to instruct the jury to find defendants not guilty, and in refusing to grant a new trial. We refer to our former opinion for our views of the law governing the case as to Walker, the only defendant then before us, and for a statement of the main facts, which we omit here.

Additional proof was introduced against Walker at the last trial. There was proof tending to show that before the sale to Dailey of the lemon extract which contributed to Dailey's death, Walker had frequently and personally sold lemon extract to a young man under circumstances which must have advised him it was bought for use as a beverage. Walker denied these sales. A former clerk of Walker's, while working for Walker, sold Dailey a bottle of lemon extract at a former date, and saw Dailey drink it back of Walker's store. Plaintiff's proof showed that on Saturday afternoon, May 19, 1900, Dailey and his wife were buying groceries in Walker's store, and as they bought each article it was placed in a box they had on or near the counter. Mrs. Dailey was asked if that was all she wanted and she said "yes," and she stepped aside to eat an orange, and turned her face in another direction. Dailey said something to the clerk in a low voice, and while Dailey watched his wife and saw that her attention was still diverted, Walker's clerk handed Dailey a bottle of lemon extract, or, as the witness who saw it explained, " He kind of sneaked it to him—he didn't hand it like the other groceries. He turned it down so Mrs. Dailey could not see it." Dailey put the bottle of lemon extract in his pocket. The clerk gave a different version of the manner in which the lemon extract was obtained, and declared he had no suspicion Dailey intended to drink it. We cannot say the jury were not warranted in concluding the clerk knew Dailey bought it for the purpose of drinking it.

Woods kept a drug store. His brother Frank was his clerk. On the same Saturday afternoon Dailey went with O. J. Mahon to Woods' drug store. Mahon stood outside

and Dailey went in and bought from Frank, and brought away a large bottle. Mahon testified he saw Frank hand a package to Dailey and he saw Dailey put it inside his overshirt or "wamus" and Dailey came out and they went together directly to Mahon's barn, and Dailey there produced from inside his "wamus" a large bottle of whiskey and from an outside pocket a bottle of lemon extract. Mahon drank of the whiskey. Dailey drank first of the lemon extract and then of the whiskey. According to Mahon's testimony, Dailey took the bottle of whiskey out of the pocket or place where he had a few minutes before seen Dailey put the package handed him by Frank Woods in the drug store. Frank Woods testified Dailey asked for a tonic and for Hostetter's Bitters, and that what he sold and delivered to Dailey was a bottle of Hostetter's Bitters, and not a bottle of whiskey. Milton Thurman testified he was present in the drug store, and that Dailey asked for a tonic and then for bitters, and that Frank named over two or three kinds, and Dailey said he would take Hostetter's Bitters, and Frank got a bottle and delivered it to Dailey, and Dailey walked out carrying it in his hand; but Thurman did not profess to know what the bottle contained, or whether it was Hostetter's Bitters or whiskey. Plaintiff's proof was that the bottle containing the whiskey much resembled a bottle of Hostetter's Bitters in size and shape, but was without lettering or labels.

The proof shows lemon extract contains ninety-five per cent of alcohol and is undoubtedly intoxicating if used as a beverage. It is clear from the proof that Dailey's death on the following Tuesday morning was due to his use of the contents of these two bottles. The testimony of the chief witnesses for plaintiff is severely criticised by defendant's counsel, but the jury believed them and the trial judge refused to set aside the verdict. The jury and the trial judge saw all the witnesses upon the stand and observed their demeanor and manner of testifying, and could judge better than we can from reading their testimony, which witnesses were the more worthy of credit. Frank

Woods and Thurman outnumbered Mahon, but Thurman did not know what Dailey actually obtained, and if there was talk about Hostetter's Bitters, it may have been to prevent the bystanders, of whom Thurman said there were several, from knowing Dailey was getting whiskey. We must assume that the jury and the trial judge believed Mahon was telling the truth and that Frank Woods was not. If the bottle of whiskey Dailey produced from the inside of his " wamus " a few minutes after he and Mahon had left the drug store was not the bottle he got at the drug store, what became of the bottle of bitters Frank Woods testifies Dailey did buy there that afternoon, and where did Dailey get the bottle of whiskey? Dailey and Mahon did not separate from the time they left the drug store till they drank whiskey out of the bottle at the barn. Dailey produced two bottles at the barn. Was he also carrying another large bottle inside his " wamus," and if so, why did he not also produce that? The whiskey bottle was found after Dailey's death, but no bottle labeled "Hostetter's Bitters." There are a number of minor incidents in the testimony tending to strengthen plaintiff's case. We do not feel warranted in saying the jury were required by the testimony to find Woods not guilty, and we certainly cannot so say as to Walker after two juries have found him guilty. This is a case of conflicting proof, where a decision by the jury and trial judge either way upon the facts cannot be disturbed.

The judgment is affirmed.

*Affirmed.*