## MAGGIE MITCHELL V. THE STATE.

### *No. 646.   Decided April 10.*

1. **Disorderly House—Charge of the Court.**—Where, on a trial for keeping a disorderly house, the court refused an instruction, in substance, that unless defendant was the owner, lessee, or tenant of the house, she could not be convicted, *Held,* error. The charge should have been given. The Act of 1889 provides, that no person can be guilty of keeping a disorderly house unless he be the "owner, lessee, or tenant of such house, and servants and mere inmates are not included."

2. **Construction of Statutes—Rule as to.**—In misdemeanor cases, if the terms of a statute distinctly limit the penalty to persons who participate in the act only in a certain way, the terms furnish the rules for the court.

3. **Same—Liability of Principals.**—While the general rule in felonies is, that all those who aid and abet in an act are principals, and may be punished as such, yet in such cases, even where the punishment imposed by statute is upon persons actually committing the acts, and not in general terms upon those who are guilty of the offense, principals who are mere aiders or abettors will not be deemed to be within the act.

APPEAL from the County Court of Bell. Tried below before the Hon. JOHN M. FURMAN, County Judge.

Appellant was convicted of keeping a disorderly house, and the punishment assessed at a fine of $200.

The case is sufficiently stated in the opinion.

The charge of the court which was excepted to was as follows, viz: "In order to justify a conviction under this charge, the State must show, beyond a reasonable doubt, that the defendant was then and there the owner, lessee, or tenant of said house; or, knowing the unlawful intent of such owner, lessee, or tenant, then and there acted with such owner, lessee, or tenant, and then and there had such control over such house and its inmates as pertains to the head of the household. * * * Now, if you believe from the evidence in this cause, beyond a reasonable doubt, that in Bell County, Texas, at any time before the 4th day of July, 1892, the defendant, Maggie Mitchell, was then and there the owner, lessee, or tenant of a house in which prostitutes were then and there permitted to resort and reside for the purpose of plying their vocation, or that the said Maggie Mitchell, knowing the unlawful intent of such owner, lessee, or tenant, then and there acted with such owner, lessee, or tenant, and did then and there unlawfully keep, or was then concerned in the keeping, of said house, and that in said house prostitutes were then and there permitted to reside and resort, and did then and there reside and resort, for the purpose of plying their vocation, you will find the defendant guilty."

The court refused a requested instruction asked by defendant, to the effect, "that the offense of keeping a disorderly house, and of being concerned in keeping, and knowingly permitting the keeping of a disorderly house, is limited to the owners, lessees, and tenants of such disorderly house, and any person not the owner, lessee, or tenant of such disorderly house, can not be punished for such offense."

*C. A. Brand*, for appellant.—The court erred in its charge as given to the jury, and in refusing the requested instruction asked by defendant. The punishment for keeping a disorderly house is only denounced against the owner, lessee, or tenant who shall keep or be concerned in keeping the house occupied by him. Acts 21st Leg., p. 33; Lamar v. The State, 30 Texas Crim. App., 694.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted and fined in the sum of $200 for keeping a disorderly house. The indictment is in the usual form, and charges her with keeping said house as owner, lessee, and tenant. The evidence discloses, that Lyda Ryan was the owner in fact of the house, and resided on an adjoining block in the city of Temple. Usually she collected money arising from the uses to which the house was put, bought the beer, etc., and paid all bills due from the house, and transacted all its business matters. Rosa Boas testified, that on one occasion she visited the house, spent the night for illicit purposes, and paid the room rent to appellant; that she visited the "girls" at the house on several other occasions; that appellant seemed to exercise control and management over the house, but she did not know whether she had it rented or not. Appellant's testimony shows her to be simply a servant and employe of Lyda Ryan, working for wages, at $20 per month, and did not manage or have control of the house or inmates, but occasionally rented out a room and collected the money therefor for the owner, Lyda Ryan. The court, in effect, instructed the jury, if appellant acted with such owner, and had control of the house and the inmates, she would be a principal offender, and should be held liable. The appellant submitted a special instruction, in substance, that she could not be convicted unless she was the owner, lessee, or tenant of the house. The court refused this charge, because "all persons are punishable who are guilty of acting together in the commission of an offense," and because the appellant's charge "ignores this principle." This charge was refused, because of the provisions of article 74 of the Penal Code. The contention of appellant is, that by the terms of the Act of 1889 (page 33) no person can be guilty of keeping a disorderly house unless he be owner, lessee, or tenant of such house.

We are of the opinion that this contention is a sound one, owing to the peculiar phraseology of that statute. This view of the matter is strengthened when the former law is looked to, to ascertain the legislative intent. Prior to the latter or amended act, all persons who were guilty of keeping such houses were subjected to the prescribed punishment. In amending the law, it was provided, that owners, lessees, and tenants only should be punished. By fair intendment, it would seem that only those who occupied such relation to the inhibited house as owner, lessee, or tenant could be punished under the

amended statute. Speaking on this subject, Mr. Bishop says: "But, when we ascend among the lighter misdemeanors, we find some differences occasioned by the smaller degrees of blameworthiness involved in an offense, or the special terms of the statute creating it. The cases are neither sufficiently numerous nor uniform to enable an author to state precisely and fully what the doctrine of the courts is on this subject; but the principle is reasonably plain, as follows: If the terms of a statute distinctly limit the penalty to persons who participate in the act only in a certain way, these terms furnish the rule for the court. Or, if the expression is general, then, if the offense is of minor turpitude, and especially if the thing is only malum prohibitum, the courts, by construction, will limit its operation to those persons who are more particularly within the reason or the expressed words of the enactment." 1 Bish. Crim. Law, sec. 657. In Kentucky it was said: "As a general rule, when a statute creates a felony, and prescribes a particular punishment therefor, or where a statute provides a punishment for a common law felony by name, those who are present, aiding and abetting in the commission of the crime, are held to be included by the statute, although not mentioned as such in the statute. But where, as in this case, the punishment is imposed by the statute, upon the person alone who actually committed the acts constituting the offense, and not in general terms upon those who were guilty of the offense, according to the common law rules, mere aiders and abettors will not be deemed to be within the act" Stamper v. The Commonwealth, 7 Bush, 612–614. Viewing the present statute from the standpoint of the entire legislation in this State in regard to keeping disorderly houses, it seems clear that the Legislature intended to do so, and did so change the law in this respect as to limit the offense to those persons who owned or are tenants or lessees of the prohibited houses, to the exclusion of those who occupied the relations of servants or mere inmates of such disorderly houses. Acts 1889, p. 33; Penal Code, art. 339. Even under the former statute, only keepers of disorderly houses could be punished. Moore v. The State, 4 Texas Crim. App., 127; Stone v. The State, 22 Texas Crim. App., 185. The court should have charged the principle enunciated in the requested instruction.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.