### Chas. Oliver v. The State.

No. 882.    Decided October 11, 1911.

Case finally disposed of January, 1912.

Opinion reached the hands of Reporter, March, 1912.

**1.—Sunday Law—Evidence—Bill of Exceptions.**

Where, upon trial of a violation of the Sunday law, the State's witness. in describing the character of play exhibited, stated among other things, that

it was quite a nice little play, there was no reversible error; besides, the bill of exceptions was defective.

### 2.—Same—Bills of Exception—Practice on Appeal.

Inferences will not be indulged to supply omissions in bills of exception, they must disclose in themselves all that is necessary to manifest the supposed error, otherwise, they can not be considered on appeal.

### 3.—Same—Evidence—Conclusion of Witness—Bill of Exceptions.

Upon trial of a violation of the Sunday law, there was no error to ask witness whether the place in question was one of public amusement, which he answered in the affirmative. This is not a conclusion, but a fact; besides, the bill of exceptions was defective in not setting out the proceedings and attendant circumstances.

### 4.—Same—Evidence—Certificate.

Upon trial of a violation of the Sunday law, there was no error in admitting in evidence the State Secretary's certificate of the company's permit for which defendant acted as ticket agent.

### 5.—Same—Evidence—Codefendant—Statutes Construed.

Under article 91, Penal Code, persons indicted in the same or different indictments can not be introduced as witnesses for one another; and the court did not err in excluding the offered testimony of a codefendant. Following Muckenfuss v. State, 55 Texas Crim. Rep., 216, and other cases.

### 6.—Same—Evidence—Lease—Bill of Exceptions.

Upon trial of a violation of the Sunday law, there was no error in admitting in evidence the lease under which the defendant's principal was acting; besides, the bill of exceptions was defective.

### 7.—Same—Peremptory Charge to Acquit.

Upon trial of violation of the Sunday law, where the evidence was sufficient to sustain the conviction, there was no error in refusing to submit a peremptory charge to acquit.

### 8.—Same—Requested Charges—Bills of Exception.

Where the bills of exception reserved to the refusal of requested instructions failed to set out the proceedings and attendant circumstances and the evidence in the case, to show whether or not they were proper, the same could not be considered on appeal; besides, those that were proper were embraced in the court's main charge.

### 9.—Same—Charge of Court—Requested Charges.

Where the charge of the court in a misdemeanor case clearly and aptly submitted the law to the facts, there was no error in refusing requested charges, in the absence of an exception to any part of the charge of the court.

### 10.—Same—Agent—Proprietor—Permitting Place of Amusement to be Open—Statutes Construed.

Under article 199, Penal Code, the proprietor of any place of public amusement who shall permit his place of public amusement to be open for the purpose of public amusement on Sunday, or the agent or employe of any such person, shall be guilty of a violation of said statute. Approving Burnett v. State, 42 Texas Crim. Rep., 600, and other cases. Davidson, Presiding Judge, dissenting.

### 11.—Same—Principals—Accomplices.

In misdemeanor cases, all parties are principals; there are no accomplices. Following Houston v. State, 13 Texas Crim. App., 595, and other cases.

### 12.—Same—Proprietor—Agent—Statutes Construed.

Under article 199, Penal Code, the Legislature intended not only to make

it an offense for the proprietor to permit his place of public amusement to be open for that purpose on Sunday when an admission fee is charged, but that any agent or employee of said proprietor who should do any act towards keeping said place open and run on Sunday should also be guilty, whether the language of said article is transposed, as we have suggested, or not. Davidson, Presiding Judge, dissenting. Distinguishing Mitchell v. State, 34 Texas Crim. Rep., 312.

### 13.—Same—Statutes Construed—Legislative Bill.

That the Legislature refused to enact a bill to amend article 199, Penal Code, can not be so construed as to be contrary to the construction placed upon said article by this court. Davidson, Presiding Judge, dissenting.

### 14.—Same—Statutes Construed—Transposing Language—Legislative Intent.

Where the transposition of the language of article 199, Penal Code, is made in order to make clear the legislative intent, in the light of other articles in the Penal Code, providing that in all misdemeanor cases, all parties are principals, the same is a correct interpretation thereof, and the court does not thereby legislate. Davidson, Presiding Judge, dissenting.

### 15.—Same—Rules of Statutory Construction—Legislative Intent.

All rules of construction, wherever used in the interpretation of statutes, are used and applied solely for the ·purpose of determining what was the intention of the Legislature in the use of the words and the language used by it in the enactment, and does not contravene articles 9 and 10 of the Penal Code, providing that criminal laws shall be construed according to the plain import of the language in which they are written, etc. Following Parshall v. State, 62 Texas Crim. Rep., 177. Davidson, Presiding Judge, dissenting.

### 16.—Same—Legislative Intent—Common Law Construction.

The court must seek to find from all the language used in the enactment the intent of the Legislature, and even the common law rule of construction, that criminal statutes are to be strictly construed, must not prevent the courts from determining from the Act itself what the intention of the Legislature was.

### 17.—Same—Statutes Construed—Rule of Construction.

Under article 25, Code Criminal Procedure, it is provided that the Code shall be liberally construed so as to attain the object intended by the Legislature; the prevention, suppression, and punishment of crime; this applies as well to civil as to criminal statutes, and the common law rule of strict construction is thereby abrogated. See opinion for further rules of construction, all of which are for the purpose to arrive at the true legislative intent.

### 18.—Same—Statutes Construed—Ticket Agent—Case Stated.

Where, upon trial of a violation of the Sunday law, the defendant was charged as the agent and employee of a certain amusement company, with unlawfully opening and permitting to be opened a certain place of public amusement to which an admission fee was charged, and the evidence showed that he was the ticket agent of said company in the ticket office of its building where a theatre was open and running on Sunday, selling tickets thereto to persons who visited the theatre, which was being acted on the stage, he was guilty of a violation of article 199, Penal Code. Davidson, Presiding Judge, dissenting.

### 19.—Same—Amendment and Comparison of Statutes—Agent—Employees.

See opinion for a discussion of amendments to article 199, Penal Code, on the Sunday law, and a comparison between said article and articles 339 and 341, Penal Code, on the disorderly house law, and the construction to be placed thereon with reference to agents and employees.

### 20.—Same—Statutes Construed—Principals—Accomplices.

See opinion for construction of articles 74 and 75, Penal Code, with

reference to principals as applied to article 199, Penal Code, and which makes all persons acting together in the commission of an offense or who aid by acts or encourage by words or gestures, principals in the offense of the violation of the Sunday law, whether they have the power or authority from the proprietor of a theatre to open or close it or not. Davidson, Presiding Judge, dissenting.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. M. Holland.

Appeal from a violation of the Sunday law; penalty, a fine of $20. The opinion states the case.

*Crawford, Walker & Williams* and *Robert B. Allen,* for appellant.— In this case appellant could only have been convicted as an agent or as an employee of the Interstate Amusement Company, alleged in the information to be a corporation and the proprietor of a theater in the city and county of Dallas, Texas, on the date alleged in the information, and before appellant could have been legally convicted it was imperative that the State show by legal and competent evidence to the minds of the jurors, beyond a reasonable doubt, that appellant on said date laid in the information, had such authority over a place of public amusement in the city and county of Dallas, Texas, that would have enabled appellant to permit such place of public amusement to be open or that would have enabled appellant to have closed such place of public amusement. In other words, appellant must have had a control over such place of public amusement superior to that of any person coming strictly within the classes mentioned in the statutes to have subjected him to punishment for violating this statute. Archer v. State, 10 Texas Crim. App., 482; State v. Delesdenier, 7 Texas, 76; Holley v. State, 14 Texas Crim. App., 505; Smith v. State, 18 Texas Crim. App., 454; Murray v. State, 21 Texas Crim. App., 620; Mitchell v. State, 34 Texas Crim. Rep., 311; Carlton v. State, 51 S. W. Rep., 213; Sparks v. State, 51 S. W. Rep., 1120; Cook v. State, 42 Texas Crim. Rep., 539; Humphries v. State, 68 S. W. Rep., 681; Strong v. State, 52 Texas Crim. Rep., 133; Wilson v. Truelock, 19 Ind. App., 389; In re Wilmington Hosiery Co., 120 Fed., 179; Hobson v. Middleton, 13 Eng. Com. Law, 175; State v. Probasco, 62 Iowa, 400; Abrahans v. State, 4 Iowa, 541.

It is well settled under the decisions of this court that where the punishment is imposed by the statute, upon the person alone who actually committed the act constituting the offense, and not in general terms upon those who were guilty of the offense, according to the common law rules, mere aiders and abettors will not be deemed to be within the Act. This doctrine was laid down as the correct rule of law in the Mitchell case, 34 Texas Crim. Rep., 311, and has since been approved by this court in Carlton v. State, 51 S. W. Rep., 213; Sparks v. State, 51 S. W. Rep., 1120; Cook v. State, 42 Texas Crim. Rep., 539; Humphries v. State, 68 S. W. Rep., 681; Strong v. State, 52 Texas Crim. Rep., 133. These cases have clearly established the

rule that where the statute, by express terms, limits the punishment to certain classes, and for the doing of a certain act, that it is only those who fall within the classes designated, and who do the particular act set out in the statute, that are amenable. Stamper v. Com., 7 Bush., 612; Com. v. Brady, 18 N. E. Rep., 568; Com. v. Gallagan, 144 Mass. Rep., 171; Archer v. State, 10 Texas Crim. App., 482; Turner v. Cross, 18 S. W. Rep., 578; Texas Life Ins. Co. v. Roberts, 55 Texas Civ. App., 217, 119 S. W. Rep., 926; Stuart v. State, 60 S. W. Rep., 554; Territory v. Stone, 4 N. W. Rep., 697, and authorities cited in dissenting opinion.

On question of conclusion of witness: Cavaness v. State, 74 S. W. Rep., 908; Stanley v. State, 73 S. W. Rep., 400; Terry v. State, 72 S. W. Rep., 382; Tillery v. State, 24 Texas Crim. App., 251.

On question of introducing certificate of permit: Cesure v. State, 1 Texas Crim. App., 19; Persons v. State, 3 id., 240; Landa v. Obert, 45 Texas, 539.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—By complaint and information filed December 10, 1909, it was charged that the appellant on November 14, 1909, in Dallas County, Texas, was the agent and employee of the Interstate Amusement Company, a corporation, which was the proprietor of a place of public amusement, to wit, a theater, situated in the city of Dallas, and as such agent and employee, he, on said last named date, the same being Sunday, did unlawfully open and permit to be opened said theater and public amusement and on said day did permit a theatrical performance to be given and exhibited in said theater for public amusement and for admission to which a fee was charged. He was tried, found guilty and a fine of $20 was assessed against him.

The appellant introduced no evidence. The State proved that on Sunday, November 14, 1909, the appellant was selling tickets to this show, or theater, in Dallas, Texas, fixing the particular house in which it occurred. Two witnesses testified that they bought tickets from him and that many other people did likewise and went into and saw the show. There was a good, big crowd therein. There was a woman and two or three men on the stage. It was called and known as the Majestic Theater. Appellant told the witnesses that he was the ticket seller. Another witness described the show or play as a scene in which a very beautiful lady was cast upon an island, and the natives were more animals than human in appearance, and they almost worshipped her because of her beauty, and made her queen of the island. Later a missionary came over to do missionary work and fell in love with her and wanted to marry her. There was singing and some music also on the stage. It was a place of public amusement, and all this occurred on Sunday, November 14, 1909. The appellant sold tickets

to this, show on this occasion to the two witnesses who testified and to many others. Each purchaser of tickets after purchasing same, went into the theater and saw the play.

The State also introduced in evidence a certificate by the Secretary of State of the State of Texas, dated June 23, 1905, certifying that a certified copy of articles of incorporation of the Interstate Amusement Company, incorporated under the laws of Missouri, were filed in the department on June 22, 1905, in accordance with the requirements of the laws of Texas, and paid the full fees therefor and is entitled to, and granted permission to do business in the State of Texas, for the purpose of the promotion of' fine arts for the term ending May 1, 1915. The certificate certifying to the copy by the Secretary of State was dated November 22, 1909.

In addition, the State introduced, in evidence a properly certified copy from the records of the county clerk of Dallas County, Texas, a lease from the Dallas Amusement Company to the Interstate Amusement Company, whereby the said Dallas Amusement Company leased to the said Interstate Amusement Company the building in Dallas, known as the Majestic Theater, which was the same that was shown by the testimony to be wherein the show, or theater, was held on said date, November 14, 1909, for the term beginning November 1, 1905, for five years. This lease specified the amount of rent that the lessee was to pay to the lessor and the times of the respective payments during the full term of the lease. It had many other provisions between the parties about repairs, lights, water, rent, etc., etc., and gave the lessee specific authority to assign or transfer the lease, and also provided that the property leased was to be used for any and all theatrical purposes. It provided for a forfeiture of the lease in ,case the lessee failed to pay the rent at the specified times for thirty days after maturity and that if the State should pass any law prohibiting the carrying on of the business for which said property was leased, that would render the lease null and void. There were other contingencies which provided for a termination of the lease, unnecessary to here state.

The record is rather large. It shows that appellant requested eleven special charges and contains seventeen bills of exceptions. Eleven of the bills of exceptions are to the refusal of the court to give the respective eleven special charges. Another one of the bills is to the overruling of the motion for new trial which contained fifteen separate and distinct grounds. It is unnecessary to notice this bill specially as the matters proper to be discussed are contained in the others.

Bill No. 2 states that while the witness W. H. Cullum was testifying for the State in chief and while he was attempting to describe what he denominated a missionary scene, he used the expression: "And it was quite a nice little play." The appellant at the time objected to -this answer and asked that it be excluded from the jury

on the ground that it was not responsive to the question propounded and was the expression of the opinion of the witness. In allowing the bill the court qualified it by stating that the trial court deemed said expression as merely a shorthand rendition of the facts.

It is the uniform holding of this court that inferences will not be indulged to supply omissions in bills of exceptions. Parties asserting the availability of supposed errors must make their bill of exceptions so full and certain in statement that in and of itself it will disclose all that is necessary to manifest the supposed error. Davis v. State, 14 Texas Crim. App., 645; Eldridge v. State, 12 Texas Crim. Rep., 208; McGlasson v. State, 38 Texas Crim. Rep., 351. A bill of exceptions to be considered must sufficiently set out the proceedings and attendant circumstances to enable the court therefrom to know certainly that an error has been committed. Thompson v. State, 29 Texas Crim. App., 208; Livar v. State, 26 Texas Crim. App., 115; Ballinger v. State, 11 Texas Crim. App., 323, and McGlasson, supra. The error complained of must be made to appear by the allegations of the bill itself. And when too indefinite to point out distinctly an error it will not bring such matter properly before the Appellate Court for review. Quintana v. State, 29 Texas Crim. App., 401; Walker v. State, 19 Texas Crim. App., 176; Hooper v. State, 29 Texas Crim. App., 614; Hennessy v. State, 23 Texas Crim. App., 340; Rahm v. State, 30 Texas Crim. Rep., 310; Wilkerson v. State, 31 Texas Crim. Rep., 86; Walker v. State, 33 Texas Crim. Rep., 359; Yungman v. State, 35 Texas Crim. Rep., 80; Gonzales v. State, 32 Texas Crim. Rep., 611; Attaway v. State, 31 Texas Crim. Rep., 475. These are but some of the earlier decisions on the subject. They have been uniformly followed by this court in all recent decisions down to the present time. This bill, thus tested, is clearly insufficient to require this court to consider it. Even if we could, we can not see how it would be possible for the appellant to be injured by the expression of the witness as quoted in the bill and how it is possible for any reversible error to have been committed by the court in not excluding the answer.

The next bill complains that while this same witness was on the stand the State asked him: "Q. State to the jury whether or not that is a place of public amusement." The appellant objected to this question on the ground "that the answer would be a conclusion of the witness and the question called for a conclusion and opinion of the witness and that one of the material allegations in the complaint was that the Majestic Theater was a place of public amusement." The court overruled the objection and the witness answered: "So I understand it." The court in allowing the bill qualified it as follows: "The witness Laws prior to this *trial* (witness) had testified that said performance occurred in the Majestic Theater, corner of Commerce and Stone Streets; that there were a lot of people in the theater; that they bought tickets and went in the door; that it was

a big crowd; that the stage curtain was up and that a woman and two or three men were on the stage; that there was music in the theater; that he asked the defendant if he (defendant) was the ticket seller, and he (defendant) informed him (witness) that he (defendant) was the ticket seller; that said occurrence took place on November 14; that the witness Cullom's testimony was substantially the same, and both witnesses were testifying about November 14 as being time their testimony referred to."

This bill is clearly insufficient as the previous one noticed was and for the same reasons. Tested by the authorities cited it does not in and of itself disclose what was necessary of the proceedings in the case to show any error to this court. It does not set out the proceedings and attendant circumstances sufficiently to enable this court to know certainly that an error has been committed. Even if we could consider it, it occurs to us that whether or not the theater mentioned was a place of public amusement was a question of fact and that a witness could be asked that question correctly and could, if he knew, legally answer the question. It would not be such a conclusion, nor call for such a conclusion as would make the testimony unlawful in view of the character of fact that was under investigation.

The next bill, No. 4, shows that the appellant objected to the copy of the permit admitted in evidence, which is described in the preliminary statement herein on many grounds. It is unnecessary to state them. This same question was before this court in the case of Gould v. State, 61 Texas Crim. Rep., 195, 134 S. W. Rep., 695, wherein this court held that the said certificate which evidently is the same that was introduced in this case was properly admitted in that case. It is unnecessary to here further discuss this matter.

The next bill shows this: "That after the State had introduced its evidence and rested, the defendant had sworn and placed on the stand as a witness in his behalf O. F. Gould and offered to prove by him that he was manager of the said theater, was present at the same on the day and date alleged in the complaint herein; that he alone opened the theater on that date and permitted same to be opened for the purpose of public amusement at said time and that he alone had the power to open and permit said theater to be opened for the purpose of public amusement on said date and that the defendant Oliver was not, on said date, either the agent or employee of the Interstate Amusement Company in Dallas or elsewhere in Texas, or the United States." The State objected to this witness testifying, because the witness himself was also charged in the same court with the same offense that the appellant herein is charged with and that he had been convicted for such offense. The court sustained the objection, and in allowing the bill qualified it as follows: "Said O. F. Gould had been convicted in the County Court at Law on the charge of violating the law in reference to this same Majestic Theater on the same identical date, viz.: November 14. Said Gould had not

paid his fine in said cause; but had appealed same to the Honorable Court of Criminal Appeals and the appeal in said Gould case was pending and undetermined at the time of the trial of the defendant Oliver." Article 91, Penal Code, is as follows: "Persons charged as principals, accomplices or accessories, whether in the same indictment or by different indictments, can not be introduced as witnesses for one another, but they may claim a severance; and if any one or more be acquitted they may testify in behalf of the others." The witness clearly was incompetent to testify. Rutter v. State, 4 Texas Crim. App., 57. The conviction need not be for the same offense. Muckenfuss v. State, 55 Texas Crim. Rep., 216.

The next bill shows that the appellant objected to the introduction of evidence of the lease above recited from the Dallas Amusement Company to the Interstate Amusement Company. The grounds of the objection, briefly stated, are that the lease, being dated November 1, 1905, was too remote to be of any probative value and because the lease had many conditions of forfeiture which could have cancelled and annulled it and taken it out of existence long before the date of the charge herein and there was no evidence that said lease was still in force and effect; and because it showed that the Interstate Amusement Company had the right therein to sublease the leased premises and to assign and transfer the lease and no testimony is shown that none of this has not been done.

This bill is also clearly insufficient for the same reason as the others herein above called attention to. Even if not insufficient, the several objections made would go to the weight of the evidence and not to its admissibility. Such testimony could and doubtless was discussed before the jury. There was no error of the court in admitting the lease.

The sixteenth and seventeenth bills of exceptions complain of the refusal of the court—the sixteenth—refusing to give a requested peremptory charge to acquit the defendant; and, the seventeenth, that as the State had failed to prove that the defendant was the agent or employee of the amusement company, a peremptory charge to acquit. The court did not err in refusing to give any of these charges.

All of the other bills of exceptions complain of the refusal of the court to give his several special requested charges, numbered from 1 to 9, inclusive. It is unnecessary to state severally these special charges. There is much repetition in them. They request charges, among other things, of the definition of a theater and of the proprietor of the Interstate Amusement Company, as to what is a musical performance, the definition of a drama; of agent, employee, and permit; as to what is meant by control, etc., of the theater; the definition of a theatrical performance; and the seventh as to the defendant acting as servant or clerk of Gould.

Not a single one of these bills of exception are complete in and of itself and does not set out the proceedings and attendant circum-

stances, and the evidence in the case to show whether or not they were proper. However, we have considered each and everyone of them. The court in allowing each one of the bills qualified it substantially by stating—the seventh, as not raised by the testimony, and the others that so far as they were proper to give had been embraced and covered fully by the court's main charge; and that the second, defining a musical performance was not called for by the testimony. As stated above, these several charges in many instances were mere repetitions and were more or less a mere change of the verbiage which was substantially given and contained in the court's charge. The court's charge on the several matters is as follows: "A theater is a play house; a building for the representation of theatrical performances; a theatrical performance is an exhibition given for the instruction or amusement of the audience and may include tragedies, comedies, farces and vaudeville performances. An agent is one who acts for another by authority from him. An employee is a person who is employed; one who works for wages or a salary— to permit means; to grant permission to give leave; to grant express license or liberty to."

We have carefully examined the whole charge of the court, and in our opinion it clearly and aptly charged all that was necessary and proper to be charged in the case so far as the special charges requested are concerned. There is no complaint by the appellant of the charge of the court itself, other than the refusal to give his said several special charges requested.

The appellant's attorneys have filed an able brief herein wherein they vigorously contend that the court has committed the many errors claimed by their bills of exceptions. In addition, since the case has been submitted, they have filed a supplemental brief wherein they, with ability, contend in effect "that the appellant can not be convicted in this cause as the 'agent and employee' of the Interstate Amusement Company because the statute itself under which the prosecution is had contemplates in effect that only the 'proprietor' of the theater could be prosecuted and convicted thereunder, because he alone can open or permit the place to be opened or closed, unless the 'agent or employee' is affirmatively shown to occupy such a relation to the public amusement that he could permit it to be opened, and such control as that he could close it. That he must have the authority and exclusive control of the theater. That a mere clerk or servant, though an employee, if he were not in control of the theater, could not be guilty, because he could not permit it to be opened, nor close it." As we understand their brief, this position was not contended for by them in their first brief, and apparently not in the lower court.

The article of the Penal Code under which this prosecution was had, 199, is as follows: "Any merchant, grocer, or dealer in wares or merchandise, or trader in any business whatsoever, or the proprie-

tor of any place of public amusement, or the agent or employee of any such person, who shall sell, barter or permit his place of business or place of public amusement to be open for the purpose of traffic or public amusement on Sunday, shall be fined not less than twenty nor more than fifty dollars. The term place of public amusement shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives and places of like character with or without fees for admission."

The language of the Legislature in this enactment may not happily express what we believe was clearly intended thereby. It is our opinion that this enactment as applicable to the character of offense charged in this case in order to express the legislative intent which we think is clear, would make the article, leaving out what is applicable to the conducting of other businesses, read as follows: "The proprietor of any place of public amusement who shall permit his place of public amusement to be open for the purpose of public amusement on Sunday, or the agent or employee of any such person, shall be fined not less than twenty nor more than fifty dollars. The term place of public amusement shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged." It will thus be seen that we merely transpose the language used by the Legislature in order to make clear what we believe was certainly intended by the Legislature. In transposing we have taken nothing out and put nothing in the enactment of the Legislature on this subject. Simply have transposed in order to make more readily seen, the clear intent of the Legislature. Murry v. State, 21 Texas Crim. App., 620; Ripley v. State, 27 Texas Crim. App., 55; Code Criminal Procedure, article 25; Penal Code, article 9. This certainly, as we conceive it, is the construction that this court has uniformly placed upon this statute. In Burnett v. State, 42 Texas Crim. Rep., 600, this court, in discussing whether or not a mere porter hired for only one day, Sunday, would be guilty of making a sale as the agent of the proprietor, when all that he had done was work that one day as a porter in the saloon, and carried the pint of liquor from the keeper to the purchaser at the door, states: "We do not think the statute means that he must be employed as a salesman in order to make him guilty of the offense, but means, *if he is in the employ of the merchant or dealer in any respect about the particular business, the statute comprehends him;* that is, suppose he was the bookkeeper of the establishment, and should make a sale on Sunday, the statute would cover such a case.

"Again, appellant complains that the charge in question authorizes the jury to convict, not on a sale or on an agency, but if he assisted in the sale. We think the statute covers this phase of the case. If he was in the employ, and knowingly aided in the sale, he would be a principal. The testimony on the part of the State shows that he

went to the door, got the money, handed it to the barkeeper, who gave him the bottle of whisky and the change, which he carried and delivered to the purchaser, Fitts, at the door. He admits himself that he carried the pint of whisky to the door and gave it to said Fitts, but denies that he received the money for the whisky. The receipt of the money, it seems to us, would make no difference. *If, being in the employ of Kearby on that day (and it does not matter as to the compensation he was to receive), he did any act in aid of the sale of the whisky, though the sale may have been made by the barkeeper, he would be amenable under the law."* Penal Code, article 74; Collins v. State, 34 Texas Crim. Rep., 95; Pigford v. State, 74 S. W. Rep., 323.

In misdemeanor cases all parties are principals; there are no accomplices. Bolton v. State, 43 S. W. Rep., 984; Rape v. State, 34 Texas Crim. Rep., 615; Houston v. State, 13 Texas Crim. App., 595; Schwartz v. State, 38 Texas Crim. Rep., 26; Keith v. State, 38 Texas Crim. Rep., 678.

It is clear to us that the Legislature intended not only to make it an offense for the proprietor to permit his place of public amusement to be open for that purpose on Sunday when an admission fee is charged, but that any agent or employee of the proprietor, who should do any act towards keeping the theater open and run on Sunday, should also be guilty, whether the language of the enactment is transposed, as we have suggested above or not. Appellant's counsel cite us to the opinion of this court in the case of Mitchell v. State, 34 Texas Crim. Rep., 311, to sustain their position. That case was against a mere servant or employee under the Disorderly House Act as it existed at that time. The Act at that time did not make it an offense for the servant, agent, or employee to in any way assist in the running of the disorderly house, but restricted the offense to the "owner, lessee, or tenant only," and this court in that case held that as Mitchell, the appellant, was neither the owner, lessee or tenant, but merely a servant or employee, he was not embraced within the language of that legislative enactment. We think that that case but accentuates the construction of the Act in question in this case, because it does expressly include "the agent or employee."

There being no reversible error, the judgment will in all things be affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

ON REHEARING.

November 25, 1911.

PRENDERGAST, JUDGE.—Appellant by his motion for rehearing, in effect, urges again all the questions which were originally raised by

his appeal ánd which were discussed and passed upon by this court in the original opinion. There is but one which we think it necessary to further discuss. All the others are stated and sufficiently discussed and correctly decided in the original opinion.

This particular one we will now further discuss is whether or not this court has properly interpreted the law under which appellant was convicted.

Appellant's able attorneys in a bold and vigorous oral argument, and also by their brief, urge only this one question. Their brief presents the matter in their usual clear, vigorous and forcible way. As we understand, they contend: That as the language of the Act under which appellant was convicted is plain and unambiguous, there is no room for judicial construction in arriving at the real meaning and scope of the Act; that, therefore, this court can not transpose the language of the Act, and that by transposing it the court, and not the Legislature, has made acts penal which are not made so by the law; that the general principle of law enunciated by text-book writers and courts to the effect, that in misdemeanors, all who participate in the commission of an offense are principals, and that our laws on that subject and the subject of accomplices have no application whatever in the offense charged against the appellant in this case; and that the Thirty-Second Legislature, expressly refused to enact a statute embracing the very matters construed into article 199 of the Penal Code by this court in the original opinion and refer to H. B. 497, introduced in the Thirty-Second Legislature - to bear out this latter contention. We believe we have thus stated substantially and in effect all of appellant's contentions on this point.

In oral argument appellant exhibited to the court said H. B. 497, with the report of the chairman of the committee to whom it was referred, recommending "that it do not pass." As a matter of fact the Legislature—neither House—acted, and it is not claimed that they did act, on the bill in any other way whatever. So that appellant's contention that the Legislature refused to enact such a statute is not borne out by the record. Neither does the fact that the committee to which it was referred reported back to the House with the "recommendation that it do not pass," show, or tend to show, that the reason it did not pass was because the Legislature was not in favor of enacting the bill so as to change the law from what it now is. We take it that the reason the Legislature did not change the Act is because it is already sufficiently comprehensive, clear and to the effect as was held by this court in its original opinion.

As stated by this court in the original opinion, in transposing the language as we did, it was merely done "in order to make clear what we believe was certainly intended by the Legislature." We also said in the original opinion that the interpretation we gave to the Act of the Legislature, in connection with the principle announced, and authorities cited, that "in misdemeanor cases all parties are princi-

pals; there are no accomplices, . . . whether the language of the enactment is transposed as we have suggested above or not," is the correct interpretation thereof. It is clear to us that we have diligently sought, and unquestionably found and announced what was the clear intent of the Legislature, in interpreting the Act as we have, and that we have not made acts penal which are not made so by the law —the legislative enactments—as contended for by appellant; but on the contrary, have given effect to the clear intent of the Legislature.

Appellant, in his contention, cites us to article 9 of the Penal Code, which, in effect, is that criminal laws shall be construed according to the plain import of the language in which they are written without making the distinction usually made between the construction of penal laws and civil laws; and to article 10, Penal Code, to the effect that when the statute specially defines the words used in the enactment of the statute that they shall have that special meaning, but that when not so specially defined they are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter to which they are employed. He also calls attention to the fact that the case of Murray v. State, 21 Texas Crim. App., 620, cited by this court, and other cases he cites, announce and apply the same rules of construction and emphasizes that rule which is, "if the words employed are free from ambiguity and doubt and express plainly, clearly and distinctly the intent according to the most natural import of the language, there is no occasion to look elsewhere."

Of course, all these rules, wherever used in the interpretation of statutes, are used and applied solely for the purpose of determining what was the intention of the Legislature in the use of the words and the language as used by it in the enactment; for as was aptly said by our Supreme Court, through Chief Justice Gaines, in Edwards v. Morton, 92 Texas, 152, and reiterated by this court in Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W., 759, and other cases: "The intention of the Legislature in enacting a law is the law itself."

Appellant's attorneys in their brief also cite sections 349 and 350 of Sutherland on Statutory Construction, quoting in their brief most of these two sections, but omitting what we think is the most important feature in section 349. The author in this section, after stating that in the construction of penal laws they should be strictly construed, as it is the Legislature, not the court, which is to define a crime and ordain its punishment, which was quoted by appellant's brief, adds, which they omit: ". . . It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. That is true. But this is not a new independent rule which subverts the old. It is the modification of the ancient maxim, and amounts to this: that though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The

maxim is not to be so applied as to narrow the words of the statute
to the exclusion of cases which those words in their ordinary accep-
tation, or in that sense in which the Legislature has obviously used
them, would comprehend. The intention of the Legislature is to be
collected from the words they employ, . . ." By what we have
shown appellant's attorneys omitted, is not to be construed as any
reflection whatever upon them, for we neither mean nor imply any
such thing. In quoting the portion of this section they show they
omit part of it. We simply call attention to and quote it, to show
that the court must seek to find from all the language used the intent
of the Legislature, and even the common law rule of construction
that criminal statutes are to be strictly construed, must not prevent
the courts from determining from the Act itself what the intention
of the Legislature was. Mr. Sutherland in these two sections cited
and quoted in appellant's brief, is discussing, as his work shows, the
rule of "Strict Construction." His next chapter is on "Liberal Con-
struction," and under it we quote as applicable to this question sec-
tions 415 and 416, as follows:

415. "A statute extends no further than it expresses the legisla-
tive will. When it is held to embrace a case which is within its
spirit, though not within its letter, it is not meant that the courts
have authority to extend a statute to cases for which it does not by
its words provide, or beyond the sense of its language. A statute is
a written law, and it can not be construed to have a sense and spirit
not deducible from its provisions. It is a general rule that courts
must find the intent of the Legislature in the statute itself. Unless
some ground can be found in the statute for restraining or enlarging
the meaning of its general words, they must receive a general con-
struction; the courts can not arbitrarily subtract from or add thereto.
*The modern doctrine is that to construe a statute liberally, or accord-
ing to its equity, is nothing more than to give effect to it according
to the intention of the lawmaker, as indicated by its terms and pur-
poses. This construction may be carried beyond the natural import
of the words when essential to answer the evident purpose of the Act;
so it may restrain the general words to exclude a case not within
that purpose.* (Italics ours.)

416. "There is no arbitrary form of words to express any partic-
ular intention; the intent is not identical with any phraseology em-
ployed to express it. Any language is but a sign, and many signs
may be used to signify the same thing. In statutes the sense signi-
fied is the law; the letter is but its servant or its vehicle. Language
is so copious and flexible that when general words are used there
is an absence of precision, and all words and collocations of words
admit of more than one interpretation. In the construction of reme-
dial statutes, while the meaning of the words is not ignored, it will
be subordinated to their general effect in combination in a whole act
or series of acts, read in the light of all the pertinent facts of every

nature of which the courts take judicial notice. *Liberal construction of any statute consists in giving the words a meaning which renders it more effectual to accomplish the purpose or fulfill the intent which it plainly discloses. For this purpose the words may be taken in their fullest and most comprehensive sense. Where the intent of the act is manifest, particular words may have an effect quite beyond their natural signification in aid of that intent.*" (Italics ours.) We have quoted these sections from volume 2 of Lewis' Sutherland Statutory Construction, sections 589 and 590, of that edition.

Article 25, Code Criminal Procedure, is: "The provisions of this code shall be liberally construed so as to attain the objects intended by the Legislature; the prevention, suppression and punishment of crime." Article 3268, Revised Statutes, is: "The following rules shall govern in the construction of all civil statutory enactments: . . . (Subdivision 6.) In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy." Notwithstanding this is the statute as to the construction of civil laws, as this court in Murray v. State, 21 Texas Crim. Rep., 620, said of Revised Statutes, article 3269, so we say of this article 3268: "Though embraced in the civil statute, is in our opinion equally as applicable, and of binding force in criminal prosecutions." These statutes, in connection with articles 9 and 10 of the Penal Code, all of which must be construed together, require this court, as we understand it, to construe all of the penal enactments of the Legislature liberally, and that the old or common law rule that they were to be construed strictly has been abrogated. The Road cases, 30 Texas, 503; Ex parte Gregory, 20 Texas Crim. App., 210; Ex parte Garza, 28 Texas Crim. App., 381.

There are many other rules for the interpretation of statutes. They are all, however, for no other purpose than to aid in arriving at the true intention of the Legislature. We will call attention to only some of them.

This court, through Judge Davidson, in Yakel v. State, 30 Texas Crim. Rep., 391, said: "Statutes should be so construed as to prevent mischievous consequences. · Such construction finds itself supported in the good order of society, protection of the weak against the strong, and should be favored, and more especially if such a construction be in opposition to one that would tend to bring about evil results. The People v. Garrett (Mich.), 36 N. W. Rep., 234; Holmes v. The State, 88 Ind., 145; The Am. & Eng. Ency. of Law, p. 702, note 2.

"The purpose and object of the Legislature in enacting the statute being known, it is the duty of the court to so construe it as to conform to that intent and carry out such purpose."

In Chapman v. State, 16 Texas Crim. App., 76, Judge Willson, for this court, said: "When the intention of a statute is plainly dis-

cernable from its provisions, that intention is as obligatory as the letter of the statute, and will even prevail over the strict letter. (Brooks v. Hicks, 20 Texas, 666; Forshey v. Railroad Co., 16 Texas, 516.)   A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter is not within the statute unless it be within the intention of the makers.   (Holmes v. Carley, 31 N. Y., 289; Chase v. Railroad Co., 26 N. Y., 523.)   In construing a' statute the principal object should be to arrive' at the intention of the Legislature.   Such construction ought to be given the statute as will best answer the intention which its makers had in view.   Whenever the intention can be discovered, it ought to be followed, although it may seem to be contrary to the letter of the statute.   (People v. Utica Ins. Co., 15 John. R., 358, 380; Sedgw. on Con. & Stat. Law, p. 225 et seq.; Potter's Dwarris on Stat., p. 174 et seq."

In Albrecht v. State, 8 Texas Crim. App., 313, Judge Clark, for this court, in construing the original article 186 (now 199), of the Penal Code, 1879, Act of 1871, hereinafter quoted, said:   "The obvious intention of the Legislature, as manifested in article 186 (now 199) of the Penal Code, was to prevent altogether the barter and sale of merchandise on Sunday, and to prohibit all merchants, grocers, dealers in wares or merchandise, or traders in any lawful business whatever, from desecrating the Sabbath, and distracting with their avocations the peace and quiet of other portions of the community, who might desire, from religious or other considerations, to devote the day to the worship of God, and to entire rest from their daily employments.   This purpose, so manifest, can not be disregarded in the search for a proper rule for construction, but must be given effect to, unless qualified or restricted by some potent provision of law rendering a contrary construction imperative.   If a reasonable construction of the language would tend to effectuate this purpose, and another construction equally as reasonable would have a contrary tendency, under well-established canons of construction courts should not hesitate in choosing the former to the exclusion of the latter. Intention frequently controls express language in the construction of a statute.   Walker v. The State, 7 Texas Ct. App., 245."

In Sartain v. State, 10 Texas Crim. App., 651, Judge White, for this court, said:   " 'Courts are not confined to the literal meaning of the words employed, in the construction of statutes, but, as was said in Burgett v. Burgett, 10 Reports, 221, the intention of the lawmakers may be collected from the cause or necessity of the Act; and statutes are sometimes contrary to the literal meaning of the words.   It has been decided that a thing within the letter was not within the statute unless within its intention.   The latter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter.   (4 Bac., title Statute, 1, sections 38, 45, 50.)   Every statute should be construed with reference to its object,

and the will of the lawmakers is best promoted by such a construction as secures that object and excludes every other.' Castner v. Walrod, 83 Ill., 171; Walker v. State, 7 Texas Crim. App., 245."

In Whisenhunt v. State, 18 Texas Crim. App., 491, Judge White, for this court, said: "It is a well-settled rule of statutory construction 'that the intent and meaning should be followed, although it may seem to be contrary to the letter of the statute.' (Sedgwich on Statutory Construction, 256.) 'Statutes are to be construed according to the intentions of the makers, if these can be ascertained with reasonable certainty, although such construction may seem contrary to the ordinary meaning of the letter of the statute.' (Id., p. 313; 4 Cush., 314; 4 Mo., 444.)"

It is earnestly and forcibly contended by appellant's attorneys that the proper construction of article 199, Penal Code, is that the statute clearly limits those who may commit the offense, to the "proprietor" or "his agent," or "his employee," and before one of these can be found guilty of the offense he must have committed the overt act necessary to constitute the offense, that is, it must appear that he, the "proprietor," or the proprietor's "agent," or the proprietor's "employee," did permit the "proprietor's"—not "his, the agent's," nor "his, the employee's,"—place of public amusement to be open for public amusement on Sunday, and that our statutes, articles 74-5, on the subject of principals, and article 79 et seq., on the subject of accomplices, have no application whatever to the offense charged against appellant in this case. They cite us to Mitchell v. State, 34 Texas Crim. Rep., 311; Carlton v. State, 51 S. W. Rep., 213; Sparks v. State, 51 S. W. Rep., 1120; Cook v. State, 42 Texas Crim. Rep., 539; Humphries v. State, 68 S. W. Rep., 681, and Strong v. State, 52 Texas Crim. Rep., 133, as sustaining their contention. We think appellant is clearly wrong in this, and that these cases, instead of sustaining their contention, establishes, in connection with the enactments of the Acts, the reverse. In discussing this matter we will first take up the Disorderly House Act and show its various enactments.

Judge Ramsey, for this court, in Ex parte Muckenfuss, 52 Texas Crim. Rep., 467, correctly said: "It has been held in Braun v. State, 40 Texas Crim. Rep., 236, that in construing a revision of statutes, the presumption is, that the codifiers and the Legislature did not intend to change the laws as they formerly stood, and that the original Act, as it existed before the adoption of the codification, may be looked to in construing its meaning as it appears in the Code. The case of Runnells v. State, 45 Texas Crim. Rep., 446, not only approves the principle of the Braun case, but may fairly be said to go further. The syllabus of that case, which fairly states the holding of the court, is as follows: 'Though the compilers of the code failed to bring in certain provisions of a statute, the court in construing the statute in the code may look to the original for aid in construction,

but can not bring forward any portion of the statute as it formerly existed.'"

Presiding Judge Davidson, in the Mitchell case, says: "We are of the opinion that this contention '(that is, that only the owner, lessee or tenant, and not those who were the servants or inmates of such house were amenable under this statute)' is a sound one, owing to the peculiar phraseology of that statute. This view of the matter is strengthened when the former law is looked to, to ascertain the legislative intent. Prior to the latter or amended Act, all persons who were guilty of keeping such houses were subjected to the prescribed punishment. In amending the law, it was provided that owners, lessees and tenants only should be punished. By fair intendment it would seem that only those who occupied such relation to the inhibited house as owner, lessee or tenant could be punished under the amended statute." By this language alone, we think the distinction is pointed out and clearly made by Judge Davidson. Again, in the same opinion it is said, "Viewing the present statute from the standpoint of the entire legislation in this State, in regard to keeping disorderly houses, it seems clear that the Legislature intended to do so, and did so change the law in this respect as to limit the offense to those persons who own, or as tenants or lessees of the prohibited houses, to the exclusion of those who occupied the relations of servant or mere inmates of such disorderly houses."

Judge Davidson does not take up and copy these enactments, but we now do so. The Act of February 12, 1858, which was made articles 339 and 341 of the Penal Code, as revised in 1879, was as follows:

339. "A disorderly house is one kept for the purpose of public prostitution or as a common resort for prostitutes and vagabonds.

341. "*Any person* who shall keep or be in any way concerned in keeping a disorderly house, as defined above, shall be fined not less than one hundred, nor more than five hundred dollars." That Act as it thus stood, as it specifically says, made "*any person*" amenable to the law who should keep or be in any way concerned in keeping such house. Then the Act, the court through Judge Davidson was construing, was amended by the Act of April 4, 1889, page 33. It is unnecessary for this discussion to quote article 339, as amended by that Act, but article 341 was then enacted as follows: "Any owner, lessee or tenant, who shall keep, or be concerned in keeping, or knowingly permit the keeping of a disorderly house, in any house, building, edifice or tenement, owned, leased or occupied by him shall be deemed guilty of keeping or being concerned in keeping, or knowingly permitting to be kept, as the case may be, a disorderly house and shall be punished by a fine of two hundred dollars for each day he shall keep, be concerned in keeping, or knowingly permitting to be kept such disorderly house. Any owner having information that his house is being kept, used or occupied as a disorderly house, shall

be guilty of knowingly permitting his house to be kept as a disorderly house under this Act, unless he shall immediately proceed to prevent the keeping, using or occupying of such house for such purpose by giving such information to the county or district attorney against such lessee, tenant or occupant for violation of this Act, or take such other action as may reasonably accomplish such results." It will be seen by this that the first Act made *"any person"* guilty who did certain things. That was amended so as to cut out *"any person"* and restricted it specifically, by the amended Act of 1889, to the "owner, lessee or tenant." Hence, Judge Davidson said in that case, "owing to the peculiar phraseology of that statute," and "from the standpoint of the entire legislation of this State in regard to the keeping of disorderly houses," only the owner, lessee or tenant could be punished thereunder.

Even Judge Davidson, himself, for this court, in Flynn v. State, 35 Texas Crim. Rep., 220, had to qualify the opinion in the Mitchell case as too restrictive, and distinguished the Flynn case from the Mitchell case, holding in the Flynn case that under article 426, Code Criminal Procedure, which provides that where one person owns the property and another person has the possession, charge or control of the same, the ownership thereof may be alleged to be in either; that as the appellant Flynn was in charge and control of the house, though not the owner, he was held to be the owner for the purposes of that prosecution and a conviction was sustained. This modification of the Mitchell case seems not to have been noticed by this court in subsequent cases decided under that statute.

Now let us see what the enactments of the Legislature are on the Sunday law, the law under discussion in this case. The Act of December 2, 1871, which was made article 186 of the Penal Code of the revision of 1879 (now 199), was: "Any merchant, grocer or dealer in wares or merchandise, or trader in any lawful business whatsoever, who shall barter, or sell on Sunday, shall be fined not less than twenty nor more than fifty dollars; provided, this article shall not apply to markets or dealers in provisions as to sales made by them before 9 o'clock a. m." By this it will be seen that this law made only any "merchant, grocer or dealer" amenable to the law, and did not, by its express provisions, extend it to the agent or employee of any such merchant, grocer or dealer. This article of the Penal Code was next amended by the Act of April 10, 1883, page 66, by providing as follows: "Any merchant, grocer or dealer in wares and merchandise, or trader in any lawful business whatsoever, *or the agent or employee of any such persons* who shall sell or barter on Sunday shall be fined not less than twenty nor more than fifty dollars; provided . . ." (It is unnecessary to quote the proviso.) It is seen that while perhaps the Act of 1871, Penal Code, article 186, of the revision of 1879, limited the persons who were guilty thereunder to the "merchant, grocer or trader," himself, that this

Act of 1883 added "or the agent or employee of any such persons." The very reverse of what had been done in the Disorderly House Act, which was construed by Judge Davidson in the Mitchell case, and others. This Act of 1883, article 186, Penal Code, was then again amended by the Act of April 2, 1887, p. 108, which is the Act now in force and under which appellant was prosecuted, as article 199, Penal Code. It is as follows:

"Any merchant, grocer or dealer in wares or merchandise, *or trader in any business whatsoever, or the proprietor of any place of public amusement,* or the agent or employee of any such person, who shall sell, barter *or permit his place of business or place of public amusement to be open for the purpose of traffic or public amusement on Sunday,* shall be fined not less than twenty nor more than fifty dollars. *The term place of public amusement shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives and places of like character with or without fees for admission.*" Under this enactment, for the first time, Sunday theaters, to which an admission fee was charged, was made an offense, and under this amendment it was first also made an offense for any grocer, merchant, etc., to permit his place of business to be open for traffic.

We will restate briefly some of the facts in this case. The appellant introduced no testimony whatever. It was clearly shown by the State, and not contradicted, that he was the ticket agent in the ticket office of the building, where the theater was open and running, sold admission tickets thereto and stated that he was such ticket agent, and upon these tickets sold by him persons went into the theater proper and saw and heard it. And that the theater was open and a play enacted on the stage, which was seen and heard by these persons who had gained admission thereto by reason of the tickets sold to them by appellant. The lease to the Interstate Amusement Company of this building in which the theater was held, expressly provided that that building so leased and operated and of which the ticket office formed a part, "was to be used for any and all theatrical purposes." That all this occurred on Sunday, November 14, 1909.

It seems to us clear that the main purpose and intention of the Legislature in these various first enactments was to prohibit bartering or selling on Sunday. Albrecht v. State, supra. It was doubtless, in 1871, believed by the Legislature that to make it an offense and to punish merely the merchant, grocer or dealer, would prevent or stop bartering or selling on Sunday. But by 1883, no doubt, the merchant, grocer or dealer began to hide behind his agent or employee, or make sales and barter through them. Hence, the Legislature then made it not only an offense for the merchant, grocer, or dealer himself, but also for his agent or employee to sell, etc. In the meantime, by 1887, the merchant, etc., and his agent or employee,

doubtless, began to elude the law by claiming that they were not selling, etc., but merely keeping their places of business open. Therefore, not only to prevent them from selling, etc., the Legislature then determined to make it an offense to keep open for the purpose of traffic, whether any sales were made or not. And by this time also the population of the State had so increased and the towns and cities therein were getting so large in population that the Sunday theater was begun and the Legislature then determined to include that in the prohibition, too. Hence, the enactment of 1887, now article 199, Penal Code. The intent and purpose of the Legislature clearly was to stop and prevent the Sunday theater when an admission fee was charged thereto. The admission fee was and is the inducing cause to the proprietor to run his theater on Sunday. The ticket agent, therefore, is one of the most important of his agents or employees. There may be and doubtless are many other necessary and proper agents and employees required to help him run a Sunday theater.

Article 74 of the Penal Code is: "All persons are principals who are guilty of acting together in the commission of an offense." Article 75 is: "When an offense is actually committed by one or more persons, but others are present, and knowing the unlawful intent, aid by acts, or encourage by words or gestures, those actually engaged in the commission of the unlawful act . . . are principal offenders, and may be prosecuted and convicted as such." Each of these articles and article 79 et seq. of the Penal Code were all enacted long prior to the enactment of any of our Sunday laws shown above, and they have continuously been in force from the time of the adoption of our original codes. These articles apply and were intended by the Legislature to apply to each and every enactment subsequent thereto and are applicable, unless otherwise stated, to each and every offense then in force or subsequently enacted. And we hold expressly that they are applicable to the offense created, prohibited and punished under said article 199, Penal Code.

As held by this court in the original opinion, all parties are principals in misdemeanor cases. There are no accomplices. This principle of law is expressly recognized and approved by this court in the opinion of Judge Davidson in the case of Strong v. State, 52 Texas Crim. Rep., 133, and additional cases to those cited in the original opinion herein, are cited therein by him in support thereof. Neither does the opinion of Judge Davidson in the Strong case hold that that principle would not be applicable to the questions arising in this. But he held in that case that the statute he was then construing was in effect the same as the Disorderly House Act which he construed in the Mitchell case, supra. This doctrine is more fully stated by Mr. Branch in his recent work on Texas Criminal Law thus: "There is no distinction between principals and accomplices in misdemeanors: A party who would be an accomplice if the offense was a felony, is a principal if the offense is a misdemeanor. If the

defendant comes either within the definition of an accomplice, or a principal, he is a principal in a misdemeanor," citing many decisions of this court. We approve as the law what he says quoted above. See section 681, p. 432, Branch Texas Criminal Law.

Under these various enactments of the Sunday law and how they were added to from time to time, retaining at all times after the first insertion, the words "or the agent or employee of any such person," it is clear to us that we reached and announced the correct interpretation of the present statute in the original opinion herein. We can not agree to appellant's contention that the agent or employee is not amenable under this statute, unless such agent and employee has the power and authority from the proprietor of the theater to open or close it. The very use of the words "agent or employee" and especially of the word "employee," taken in connection with our statute on the subject of principals, indicates clearly and without doubt to us that the Legislature intended that whoever permitted the theater to be open, when an entrance fee was charged, or aided or did any act in aid thereof, was amenable to this law. As we understand the word "employee" is, for all purposes, in effect, synonymous with servant. "A servant is defined to be a person employed to labor for the pleasure or interest of another; especially in law, one employed to render service or assistance in some trade or vocation, but without authority to act as agent in place of his employer; an employee." 26 Cyc., 965. If the Legislature had intended that only the proprietor who permitted his place of public amusement to be open on Sunday, should be amenable, it would not have added "or the agent or employee of such person." An agent, in the broadest sense and use of the word, might be construed to have the same power and authority as his principal, but no such inference could be drawn from the use of the word employee. It was evidently used by the Legislature to apply to any subordinate who did not have the power and authority of his principal or the proprietor. Each and every agent or employee of the proprietor in some way acts together with his proprietor, in the commission of the offense, or aids by acts, or encourages by words or gestures, the proprietor in permitting his theater to be open and run on Sunday; and each person who acts with the proprietor in the commission of the offense, or aids him by acts or encourages him by words or gestures, are, under our law, principals and are amenable to our Sunday laws on this subject, whether they have the power and authority from the proprietor of the theater to open or close it or not. They can not claim with any show of reason, or fact, that they do not know his unlawful intent and act. Hence, under the very terms of our laws, articles 199, 74 and 75 of our Penal Code, they are violators thereof. Of course, they would also be amenable if they had the power and authority to open or close the theater, or, as it is expressed in article 199, "permitted" this, as well.

"It is not necessary to allege the facts relied upon to show the defendant to be a principal, although the offense may not have been actually committed by him. If he is a principal by. reason of the part performed by him in the commission of the offense, he may be convicted under an indictment, or complaint and information, charging him directly with its actual commission." White's Ann. Penal Code, section 86, subdivision 2; Williams v. State, 42 Texas, 392; Gladden v. State, 2 Texas Crim. App., 508; Davis v. State, 3 Texas Crim. App., 91; Tuller v. State, 8 Texas Crim. App., 501; Mills v. State, 13 Texas Crim. App., 487.

It might be not only appropriate, but it would also be proper in some cases to charge and apply the law of principals. It seems the charge of the court in this case did not do that. No complaint whatever on that ground is made by the appellant. The proof in this case was uncontradicted and shows that appellant violated and was amenable to our law.

Without further comment or quotation than was given in the original opinion herein of the case of Burnett v. State, 42 Texas Crim. Rep., 600, and other cases to the same effect, cited therein and by us in the original opinion, we think it clearly construes our laws as we have construed them herein on the subject discussed herein, and that they fully and completely sustain our opinion herein.

We have reached these conclusions after careful and patient investigation and with the best thought that we are able to give thereto. The motion for rehearing will, therefore, be overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE, dissenting, will write later.

[Opinion finally. delivered January 1, 1912, but did not reach the Reporter until March 21, 1912.—Reporter.]·

DAVIDSON, PRESIDING JUDGE (dissenting).—I do not propose writing in detail my reasons for this dissent. A mere reference to the statute and the construction placed on it by the majority opinion might be sufficient to show the erroneous conclusion reached by that opinion.

By express provision of articles 1 and 9 of the Penal Code, there can be no crime in Texas except it be declared by the Legislature in plain language. This, of course, must be by legislative enactment. This court can not by construction enact laws or create offenses. No one will question this proposition.

Now to the case in hand. Appellant was charged as "agent" and "employee" with permitting a place of public amusement to be opened on Sunday for public amusement. He was not charged as "proprietor." The statute, article 199 of the Penal Code, in so far as it relates to this offense, will read, "The proprietor of any place of public amusement, or the agent or the employee of any such person who

shall permit his place of public amusement to be open for the purpose of public amusement on Sunday, shall be fined," etc. This article fixes definitely the relation of the "proprietor," the "agent" and the "employee," and defines the circumstances under which each shall be guilty of violating it. This court has no authority to change these relations. That is legislative function, not judicial. The language of the statute is not ambiguous or doubtful. The "proprietor" sustains one relation to the offense denounced, while his "agent" or "employee" sustains a very different one. My brethren have confounded these relations and placed the parties in the same class. In order to do this they transposed the language of the statute so as to make it read: "The proprietor of any place of public amusement who shall permit his place of public amusement to be open for the purpose of public amusement on Sunday, or the agent or employee of such person, shall be fined," etc.

By this transposition of words a new statute is created by the court to stand in the stead of that enacted by the Legislature. The relations of the parties—*proprietor, agent and employee*—are completely changed and confounded, and the agent or employee made to suffer punishment if the "proprietor" permits his place of amusement to be opened on Sunday. This is a complete subversion of the definite language of the statute, and the "agent" and "employee" are thereby punishable for the acts of the proprietor. The theory of this transposition of language is to constitute the agent a principal and convict under the proposition that in misdemeanors all actors are guilty as principals. This rule does not apply to the statute under consideration as enacted by the Legislature. Where the Legislature fixes the status of parties to a given act, it must so remain. The courts can not change it. This is fully recognized in the constitutional division of powers. Article 2, section 1, of the Constitution. It is also adjudicated in this State. Mitchell v. State, 34 Texas Crim. Rep., 311; Flynn v. State, 35 Texas Crim. Rep., 220; Cook v. State, 42 Texas Crim. Rep., 539; Hamilton v. State, 60 S. W. Rep., 39; Strong v. State, 52 Texas Crim. Rep., 133; Carlton v. State, 51 S. W. Rep., 213; Sparks v. State, 51 S. W. Rep., 1120; Humphries v. State, 68 S. W. Rep., 681; Murray v. State, 21 Texas Crim. App., 620. But why multiply authorities? The rule seems to be universal.

The Legislature (Thirty-Second) at its regular session refused to enact a statute embracing the identical matters construed by my brethren into article 199. See House Bill No. 497. It was recognized by that body that the statute (article 199) did not cover or embrace these matters, and to supply these omissions Bill No. 497 was introduced in the House. But it met with humiliating defeat at the hands of the committee, and the House thereby refused to pass it. My brethren have by their opinion made that a crime which the legislative department refused to denounce as a crime, and they have made criminal that which the lawmaking power declined to do, as

the majority did by inserting moving picture shows in the same statute under the category of theaters in Ex parte Lingenfelter, decided at the present term. Thus another line of legislative opinions is inaugurated. Invasion of the powers, duties and authority of a coordinate branch of government by another coordinate branch is not to be indulged nor tolerated. If the Legislature desires to create new offenses, it is with it to do so. It is not the province of this court so to do.

I respectfully dissent.